# Exhibit A

Edwin J. Jacobs, Jr., Esquire (NJ Attorney I.D.#2714011971)
JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys at Law
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
ejacobs@jacobsbarbone.law
Attorneys for Plaintiffs Marty Small and LaQuetta Small

| | |
|---|---|
| MARTY SMALL and LaQUETTA SMALL, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION ATLANTIC COUNTY |
| Plaintiffs, | |
| | DOCKET NO. |
| vs. | Civil Action |
| CRAIG CALLAWAY and JOHN DOES 1-5 | **COMPLAINT, JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL** |
| Defendants. | |

Plaintiffs, Marty Small and LaQuetta Small, residing at 116 Presbyterian Avenue, Atlantic City, Atlantic County, New Jersey, complaining against the defendants, say as follows:

## BACKGROUND

1. Plaintiff Marty Small ("Mayor Small") is currently the Mayor of the City of Atlantic City. He was re-elected to a one-year term following the City's November 2020 Special Election.

2. Plaintiff LaQuetta Small ("Dr. Small") is the Principal of Atlantic City High School. Prior to her assuming that role in 2019, Dr. Small was the Principal of the Pennsylvania Avenue School in Atlantic City, New Jersey from 2013 to 2018.

3. While Dr. Small was serving as the Principal of the Pennsylvania Avenue School, the Atlantic City School District hired her cousin, Kayan Frazier, as a substitute

teacher. Frazier filled in at multiple schools throughout the district including the Pennsylvania Avenue School and the Board approved him for hire on March 30, 2015.

4.  When the Board approved Frazier in March of 2015 he was living at the Small residence. But as of November 2, 2015, Frazier lived in his own residence located at 2200 Hamilton Avenue, Apartment A, Atlantic City, New Jersey. The Atlantic City Board of Education issued a W-2 to Frazier for the 2015-2016 year which confirmed that address. His lease there started in August of 2015. (**Exhibit A**).

5.  From the time that he was hired until his termination, Frazier was sent to the following schools as a substitute teacher: Uptown Complex, Sovereign Avenue School, Dr. Martin Luther King, Jr. School, Texas Avenue School, Richmond Avenue School, Brighton Avenue School and Pennsylvania Avenue School. For two years, Frazier performed without any apparent issues.

6.  However in February of 2017, Dr. Small learned that Frazier was interacting with a student outside of school hours, in part by picking him up from school in his personal vehicle and hosting him overnight. Dr. Small reported Frazier's unprofessional conduct to the proper authorities:

   (a) On February 24, 2017, Dr. Small filed a report with the Division of Child Protection and Permanency and detailed the unprofessional conduct of Frazier;

   (b) Simultaneously, Dr. Small completed a Source4Teachers incident report form that cited Frazier for unprofessional conduct and recommended that he be "removed from school";

   (c) Dr. Small took an additional step and contacted the mother of the student that Frazier was spending time with outside of school. The student's mother told Dr. Small that Frazier was "helping out";

   (d) On March 15, 2017, Dr. Small sent follow-up correspondence to the District Manager of Source4Teachers, Wesley Wallace. She

2

    believed the student was still staying overnight at Frazier's home and repeated that Frazier's conduct was "inappropriate"; and

  (e) When Dr. Small received a response from Mr. Wallace, she immediately sent another letter disclosing new information regarding Frazier texting a student.

7. Notwithstanding Dr. Small's reporting, Frazier was placed at five (5) schools in the Atlantic City School District over the course of thirteen (13) days in the month of March 2017. On April 3, 2017, Frazier was terminated from his position as a substitute teacher in the Atlantic City School District. No formal investigation was conducted by the Board at that time.

The Federal Criminal Complaint Signed Against Frazier

8. Beginning in February of 2019, the Atlantic County Prosecutor's Office began investigating Kayan Frazier for sexual misconduct involving minors. On April 15, 2019, the Atlantic County Prosecutor's Office charged Frazier with unlawful possession of child pornography.

9. Thereafter, the United States began an investigation into Frazier and obtained federal warrants to search Frazier's apartment and car on May 23, 2019. On July 3, 2019, a criminal complaint was filed against Frazier in the Federal District Court of New Jersey. Count I of the Complaint charged "receipt of child pornography" from March of 2015 through April 15, 2019. Count II charged "distribution of child pornography" from September 8, 2018 through November 11, 2018. Count III charged "production of child pornography" from March 2017 to April 15, 2019.

10. Counts II and III of the Complaint against Frazier establish a time frame of March 2017 to April 15, 2019, when Frazier did not live with the Smalls. The only relevant

3

locations regarding Counts II and III in the Complaint are 2200 Hamilton Avenue, Atlantic City, NJ and Somers Point, NJ, both of which were leased by Frazier.

### Defendant Craig Callaway's Defamatory Statements

11.     Defendant Craig Callaway is a political organizer. Defendant Callaway's political affiliations motivated him to falsely accuse Mayor Small and Dr. Small of serious criminal activity involving sexual abuse of children that he knew was false and/or in reckless disregard of the truth.

12.     On October 19, 2020, defendant Callaway appeared on the Harry Hurley talk show, WPG 95.5 FM, and published multiple lies to the 1.8 million citizens across the seven (7) counties in South Jersey that make-up Hurley's audience. Defendant Callaway accused Mayor Small and Dr. Small of consenting to Frazier's rape of children in their home and covering it up. Thus, defendant Callaway falsely accused the Smalls of committing a crime.

13.     During the interview with Hurley, defendant Callaway published the following lies:

- "Marty Small attacked me about my support for Van Drew ... and I just want to say this ... Marty, you and your wife should have been focused on protecting and saving children who were in your home, who were savagely attacked and raped in your home."

- "You had the opportunity and obligation to protect the children in the City of Atlantic City in your home and you failed abjectly."

- "By choosing to not do the human thing, they [Mayor Small and Dr. Small] chose to protect themselves and their interest."

14.     Befuddled by defendant Callaway's statements, Hurley cautiously asked if there was actually any evidence that the allegations in the Frazier complaint took place in the Small's home. Defendant Callaway completely avoided Hurley's question. But 25

4

seconds later, Hurley repeated himself and defendant Callaway hesitantly responded as follows:

> "Yes ... it's public, it's right there ... it happened, it actually happened ... that's the reason the monster was removed from their home".

Defendant Callaway provided no factual support for his statements that children were raped in the Small's home nor did he explain where it was "public record".

15. One week later on October 26, 2020, defendant Callaway appeared on a live "AC 411" interview and demonstrated that he maliciously lied during the October 19, 2020 interview on Harry Hurley. Defendant Callaway also published additional lies about the Smalls further accusing them of knowingly allowing Frazier to sexually abuse children.

16. Defendant Callaway began the AC 411 interview by stating that it was "public information" that "LaQuetta Small caught Frazier with a child." Then he recited all of the different homes where Frazier could have raped children, particularly focusing on Frazier's 2200 Hamilton Ave. and Somers Point apartments listed in the Frazier complaint even though he stated it was "public record" that children were raped in the Small home. Defendant Callaway also stated that "Marty allowed Frazier to attack children time after time in Somers Point" and that "Marty caught Frazier with a child." Finally, he claimed Dr. Small did nothing as Principal.

17. The criminal accusations that defendant Callaway published against the Smalls during both interviews were false and defendant Callaway knew they were false and/or in reckless disregard of the truth.

18. Frazier moved out of the Small home in August of 2015 and thereafter lived at 2200 Hamilton Avenue and in Somers Point. Counts II and III of the Frazier Complaint

5

charge production and distribution of child pornography, respectively, beginning March 2017 through April 15, 2019. These dates are years after Frazier vacated plaintiffs' residence.

## COUNT 1
### (Slander Per Se)

19. Defendant Callaway, at all times relevant hereto, knowingly published false information accusing Mayor Small and Dr. Small of a crime, and/or published such criminal accusations in reckless disregard of the truth.

WHEREFORE, plaintiffs demand judgment against defendant Callaway for the publication of defamatory statements accusing the plaintiffs of a morally reprehensible crime as follows:

A. Compensatory damages;

B. Punitive damages; and

C. Any other relief which the Court deems equitable and just.

## COUNT 2
### (Civil Conspiracy)

20. Plaintiffs repeat and incorporate all previous allegations as if fully set forth herein.

21. Civil conspiracy is an agreement by two or more persons to commit a wrongful act, which agreement may be made orally, in writing, or may be implied by the conduct of the parties.

22. In the months leading up to the November 2020 special election, defendant Callaway was encouraged by and collaborated with John Does 1-5 to publish information regarding Mayor Small and Dr. Small that they knew was false and/or in reckless

disregard of the truth. The identities of the those persons are currently unknown and unconfirmed.

WHEREFORE, plaintiffs demand judgment against defendant Callaway and John Does 1-5 for conspiring to defame Mayor Small and Dr. Small by accusing them of a crime as follows:

A. Compensatory damages;

B. Punitive damages; and

C. Any other relief which the Court deems equitable and just.

### RULE 4:5-1 CERTIFICATION

Pursuant to R. 4:5-1, I hereby certify that to the best of my knowledge, information and belief, the matter in controversy is not the subject of any other action pending in any Court or arbitration proceedings, and no other action is contemplated. I know of no other parties that should be joined herein.

### CERTIFICATION OF COMPLIANCE WITH R. 1:38-7(c)

I certify the Confidential Personal Identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

### JURY DEMAND PURSUANT TO R. 1:8-1(b) and R. 4:35-1

Plaintiffs, Marty Small and LaQuetta Small, hereby request trial by jury as to all issues herein.

## DESIGNATION OF TRIAL COUNSEL 4:5-1(c)

Plaintiffs, Marty Small and LaQuetta Small, hereby designate Louis M. Barbone, Esquire as trial counsel in the within matter.

JACOBS & BARBONE, P.A.

_____
Edwin J. Jacobs, Esquire

Dated: 3-9-21

# EXHIBIT A

# LEASE AGREEMENT

**IMPORTANT PHONE NUMBERS:**

**MAIL PAYMENTS TO:**
HAMILTON VENICE PARK, LLC
P.O. BOX 1667
LINDEN, NJ 07036

**MANAGEMENT OFFICE: 732-340-0100**
**MAINTENANCE: 609-348-5630**
**SUPERINTENDENT: 609-348-5630**

Lease, made this     **2ND DAY OF NOVEMBER, 2015**, whereby **HAMILTON VENICE APTS., LLC,** Landlord,

Lessor, and     **KA'YAN AND SHARNICE FRAZIER,** TENANTS

now residing at     **116 N. PRESBYTERIAN AVENUE, ATLANTIC CITY, NJ 08401**

take the apartment **#A** in the building at **2200 HAMILTON AVENUE, ATLANTIC CITY, NJ 08401**

to be occupied as a strictly private dwelling apartment by one family of **TWO** person/s for a period of **ONE YEAR**
**Occupants:     KA'YAN FRAZIER AGE: 23  SHARNICE FRAZIER AGE: 23**

From **NOVEMBER 2, 2015, THROUGH OCTOBER 31, 2016** at the yearly rent of **$9,600.00** payable in equal monthly installments of **$800.00** in advance on the *1st day of each month*. Tenant agrees to pay a *late charge of $25.00* on any rent payment remaining unpaid for a period of *5 days after such payment becomes due*, and shall become immediately due as additional rent. Payment by tenant or receipt by landlord of a lesser amount than the monthly rental provided in this agreement shall be applied to the earliest unpaid rent. If rent not paid by 10*th day of any month*, legal action will be taken.

1. Landlord requires a security deposit in the amount of **$800.00**. Which will be deposited in an interest bearing escrow account at the current interest rate of .45% at The Provident Bank, P O Box 1001, Iselin, NJ 08830? Said security shall not be applied as rent to any month by the tenant or the landlord.

**Renewals and Changes in the Lease:** The Landlord may offer the tenant a new lease to take effect at the end of the lease. The new lease may include reasonable changes. The tenant will have Thirty days (30) before the Lease Term ends to notify Landlord in writing of their acceptance or decision to vacate the premises at the end of the Lease. Tenant must give landlord 30 days notice, by certified mail, of intention not to renew tenancy or be liable for one month's additional rent. If the notice not to renew the Tenancy is not given within the time as agreed, this lease shall, at Landlord's option, either terminate on said expiration date or be automatically renewed for an additional one year term at an increase of 10% over the existing rental.

2. **We agree to:**
   Supply at no extra charge the following:
   A. All utilities except electric and telephone
   B. Heat at reasonable hours during the cold months of the year
   C. Hot and cold running water
   D. A range and refrigerator
   E. Air conditioners are not provided or replaced
   F. Building and grounds maintenance

3. **You agree to:**
   Take good care of the apartment and its fixtures and not allow anyone to drive nails in the walls or woodwork.

   At your own cost and expense make and do all repairs required to walls, ceiling, paper, glass, plumbing work, ranges, refrigerators, air conditioners, dishwashers, disposals, pipes and fixtures in the apartment resulting from your misuse or neglect and at the end or other expiration of the term you shall deliver up the premises in good order and condition. You shall be responsible for any damage to any other portion of the building caused by your negligence.

   Not do or permit anything to be done in or about the premises which shall interfere with the rights of other tenants.

   Not install any secondary locks without the prior written consent of the landlord and then only provided that an additional key is supplied to the landlord in order that landlord may gain access to the premises at any time.

Not install or use any clothes dryer, freezer, clothes washing machine, garbage disposal unit or any appliance which may interfere with radio or television reception, except with the written permission of the landlord.

Not assign this lease nor sublet your apartment or any part of it.

Apartment may not be left vacant for extended periods of time. Tenant is responsible to maintain minimal heating while not in apartment to avoid pipes freezing in the winter.

Keep your children, if any, off the lawns, common hallways and parking areas.

Pay for the cost of all electricity used in the premises.

Not allow boats, trailers or other unauthorized vehicles to be parked anywhere on the premises belonging to the landlord.

Not repair cars on the premises.

Not install window air-conditioners without prior written consent of the landlord. All air-conditioners must be removed from the windows from October 15th to May 15th.

Be responsible for the condition of the screens, blinds and windows after accepting occupancy of the apartment.

Pay rent to the landlord by money order or certified check. If any previous rent payment has been returned for any reason, there will be a $35.00 charge. Landlord will not accept post dated checks and will not be responsible for any fees incurred if post dated check is received and deposited.

Pay a charge of $125.00 unless you return the keys to the landlord immediately upon vacating.

Pay reasonable attorney's fees in the event a suit for possession or suit is instituted because of your failure to pay rent when due; this fee will be considered as additional rent.

Give the landlord the right, without notice according to law, to sell or otherwise dispose of any personal property left by you on or about the premises after you have vacated the premises, or have been evicted for non-payment of rent.

**We both agree:**

This lease is subject and subordinate to all mortgages now or hereafter placed on the property.

A guarantee is not provided for a specific date for delivery of the apartment but rent shall only be charged from the date on which possession is made available.

There will be no rent reduction or compensation for inconvenience due to repairs or interruption of service of heat, hot water, or appliances unless caused by the negligence of the landlord.

No promises have been made except those in this lease.

All notices, complaints or repair requests under this lease must be in writing [certified] except requests for emergency repairs.

In the event the tenant shall move or arrange to move from the leased premises before the expiration of the term without the written permission of the landlord, all rents reserved accrued or to accrue shall become immediately due and payable. If the tenant is evicted for any violation of the lease; tenant will be responsible for rent till the end of the Lease term, or until the Landlord is able to re-rent the apartment whichever comes first.

Any damage in the development caused by the tenant or any member of his family may be repaired by the landlord and the cost charged to the tenant to be paid with the next rent payment as additional rent.

Tenant acknowledges receipt of the Landlord's Registration Statement as required by law and a copy of the "Truth in Renting" statement issued by the N.J. Department of Community Affairs.

The landlord or its agents shall not be liable for any damage to property entrusted to employees of the building nor for the loss of any property by theft or otherwise.

Tenant has examined the premises and is satisfied with the physical condition except as set forth in an addendum to be affixed hereto, and the taking of possession thereof is conclusive evidence of receipt of them in good order and repair.

This lease can be changed in writing only, signed by both landlord and tenant.

Tenant shall observe the Rules and Regulations affixed hereto and any changes made by the landlord: said Rules and Regulations are hereby made part of the lease.

Tenant has received a copy of the EPA booklet entitled "Protect Your Family From Lead In Your Home".

"SEE ANNEXED RIDER RELATING TO LEAD DISCLOSURE"

## NO PETS ALLOWED.

### Violation, Eviction and Re-entry

The Landlord reserves the right of re-entry which allows the Landlord to end this Lease and re-enter the Apartment if the Tenant violates any agreement in this Lease. This is done by eviction. Eviction is a court procedure to remove a tenant. The Landlord may also evict the Tenant for any one of the other grounds of good cause allowed by law. Eviction is started by the filing of a complaint and a summons to appear in court. After obtaining a judgment for possession and compliance with the warrant of removal the Landlord may re-enter and take back possession of the Apartment. If the cause for eviction is non-payment of Rent, notice does not have to be given to the Tenant before the Landlord files a complaint. If there is any other cause to evict, the Landlord must give to the Tenant the notice required by law before the Landlord files a complaint for eviction.

### Liability of Landlord and Tenant

The Landlord is not liable for loss, injury, or damage to any person or property unless it is due to the Landlord's act or neglect. The Tenant is liable for any loss, injury or damage to any person or property caused by the act or neglect of the Tenant, the Tenant's family or domestic employee or others over whom the Landlord has no control.

### Tenant's Repairs and Maintenance

The tenant shall: (a) pay for all repairs, replacements and damages caused by the act or neglect of the Tenant and the Tenant's family, guests and domestic employees.
(b) Promptly notify the Landlord of conditions which need repair.
(c) Use no more electricity than the wiring to the Apartment or feeders to the Building can safely carry.

### Access to Apartment

The Landlord shall have access to the Apartment on reasonable notice to tenant to (a) inspect the Apartment, (b) make necessary repairs, alterations, or improvements, (c) supply services, and (d) show it to possible buyers, mortgage lenders, contractors and insurers.
The Landlord may show the Apartment to rental applicants at reasonable hours on notice to the Tenants within 3 months before end of the Term.
The Landlord may enter the Apartment at any time without notice to the Tenant in case of emergency.

### Fire and Other Casualty

The Tenant shall notify the Landlord at once of any fire or other casualty in the Apartment. The tenant is not required to pay rent when the Apartment is unusable. If the Tenant uses part of the Apartment for living purposes, the Tenant must pay rent pro-rata for the usable part.

Either party may cancel this Lease if the Apartment is so damaged by fire or other casualty that is cannot be repaired within 90 days. If the parties cannot agree, the option of a contractor chosen by the Landlord and the Tenant will be binding on both parties.

This Lease shall end if the Apartment is totally destroyed. The Tenant shall pay rent to the date of destruction.

If the fire or other casualty is caused by the act or neglect of the Tenant, the Tenant's family, guests or domestic employees, the Tenant shall pay for all repairs and all other damages.

### Survival

If any agreement in this Lease is contrary to law, the rest of the Lease shall remain in effect.

### End of Term

At the end of the Term the Tenant shall (a) leave apartment clean, (b) remove all of the Tenant's property, (c) repair all damage including that caused by moving, and (d) vacate the Apartment and return it with all keys to the Landlord in the same condition as it was at the beginning of the Term except for normal wear and tear.

**RULES AND REGULATIONS:**
**TENANT WILL NOT:**
1. Leave any personal belongings on lawns, walks, driveways or in public hall;
2. Do anything to disturb his neighbors;
3. Overload the electric system or use the kitchen sink or the toilet for garbage or waste;
4. Erect any window or door signs or outdoor radio, television aerials or satellite dishes on the Landlord's property including common areas, walls, under walls etc.
5. Change the lock on the apartment door;
6. Store any highly flammable material in the apartment or storage areas;
7. Litter or obstruct the public halls or grounds;
8. Do anything that will increase the insurance rates on the building;
9. Keep any pets in your apartment or in the development;
10. Violate any city or state laws or regulations;
11. Install any washing machines or dryers in your apartment;
12. Perform any vehicle repair work, changing oil, emptying ashtrays on the streets or in the driveways or parking areas, and/or washing cars on apartment property is prohibited. Tenant may not park in fire zones or in front of garages at any time.
13. Install waterbeds without written permission of Landlord:
14. Install any air conditioners in windows without written consent of the Landlord.
15. Paint interior of apartment without written permission of Landlord.
16. Permit your children to play in public halls, fire escapes, lawns, parking lots or driveways.
17. Not engage in abusive conduct towards landlord, or employee. Abusive conduct includes, but is not limited to, physical violence, assault, verbal abuse, committed by the tenant or any agent, employee, licensee, invitee of the tenant upon any employee or agent of the Landlord. Such abusive conduct constitutes a default under the lease by the tenant and landlord has the right to terminate this lease.
18. Cooking is not permitted on porches, balconies, and/or common grounds of the complex. Barbecues, charcoal grills, gas grills or any cooking apparatus are strictly prohibited
20. Tenant will not use any harsh cleaners on the hardwood floors. Tenant will only use a dust mop and hardwood floor cleaner on floors. Any damage caused to the hardwood floors by the tenant will be charged to the tenant at the prevailing rate per square foot. Tenant will cover at least 75% of hard wood floors with carpeting.

**TENANT WILL:**
1. Place garbage in receptacles provided by landlord; All trash shall be disposed of in proper containers. No trash, bottles or papers shall be left in any hall or other public place. Tenant's family members, visitors, licensees, invitees, employees and agents are expressly forbidden to throw anything whatsoever out of the windows or doors. Recycling must be performed in accordance with the local ordinances.
2. Take good care of the apartment and the equipment supplied by landlord;
3. Not wash motor vehicles on landlord's property;
4. Obey the parking regulations which may be posted by landlord.
5. Use the apartment only as a residence for the persons listed on your application;
6. Permit landlord or its agents to enter the apartment during reasonable hours to
   (a) inspect for, or make necessary repairs, or
   (b) Show the apartment to future tenants.
7. Replace all broken glass and screens at their own expense if the damage is caused by the tenant.
8. Make inspection with Landlord's agent on day of vacating premises between the hours of 9 a.m. and 5 p.m., excepting Sundays, and sign a move-out report as to condition of premises.
9. Park one vehicle by permit only and only with a current registration and valid inspection sticker. Others will be towed away at owner's expense.
10. Tenant is responsible for the maintenance of the smoke detector and carbon monoxide detector provided by the management.
11. The Tenant is responsible for obtaining renters insurance for their personal property. The Landlord assumes no liability for the tenant's personal property.
12. Agrees to pay as additional rent all reasonable attorney fee, late charges, legal fees, court cost, and other expenses incurred by the landlord in the enforcement of any of the agreements, covenants, and obligations under the lease and the law. These fees and costs, if not paid when due and owing, shall be deducted from the tenant's security at the end of the tenants lease.

13. The tenant agrees to give prompt written notice to the Landlord of any leak, flooding, chipping paint, mold or other defects in the premises.
14. The tenant shall close all openings to the apartment to avoid possible damage from storm, rain or freezing. All doors and windows must be closed when the tenant leaves the apartment. The tenant will be billed for any windows found open during the heating season.
15. The tenant shall be responsible for replacing all burned-out light bulbs in his or her apartment.
16. The tenant will make the apartment available for extermination as necessary.
17. Keep windows closed during heating to season to minimize heat lose.

TENANT AGREES;

In the event of a tax increase during the term of the lease, Landlord shall have the right to surcharge the tenant their prorated share of such increase in accordance with the law. Additionally, if a capital improvement is made, the landlord shall also have the right to increase the rent in accordance with the law. These increases will be considered "Additional Rent".

In the event the landlord, in its sole opinion, determines that Tenant's apartment is unsanitary or is creating an infestation situation or otherwise fails to maintain the apartment in accordance with the rules and regulations of the Board of Health, and tenant fails to cure such condition within twenty-four (24) hours of notice from Landlord or the Board of Health, Landlord shall have the right to take all steps as are necessary to cure this problem at Tenant's sole cost and expense. Such cost and expense shall be considered as additional rent. Landlord shall have the option of terminating the tenancy for Tenant's failure to comply with the provisions of this paragraph.

Landlord:
By: _____

Tenant: _____
Tenant: _____

Date: 11/2/2015

# Civil Case Information Statement

**Case Details: ATLANTIC | Civil Part Docket# L-000862-21**

**Case Caption:** JACOBS EDWIN VS CALLAWAY CRAIG
**Case Initiation Date:** 03/15/2021
**Attorney Name:** EDWIN J JACOBS JR
**Firm Name:** JACOBS & BARBONE, PA
**Address:** 1125 PACIFIC AVE
ATLANTIC CITY NJ 08401
**Phone:** 6093481125
**Name of Party:** PLAINTIFF : Jacobs, Edwin, J
**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** TORT-OTHER
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** YES

**Are sexual abuse claims alleged by: Edwin J Jacobs?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
**If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/15/2021
Dated

/s/ EDWIN J JACOBS JR
Signed