**LENTO LAW GROUP, P.C.**
Daniel W. Weininger (DW-5824)
3000 Atrium Way, Suite 200
Mount Laurel, NJ 08054
Tel: (856) 652-2000
Fax: (856) 375-1010
dwweininger@lentolawgroup.com
weiningerlaw@gmail.com
*Counsel for Defendant Craig Callaway*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARTY SMALL and LaQUETTA SMALL,<br><br>Plaintiffs,<br><br>v.<br><br>CRAIG CALLAWAY and JOHN DOES 1-5,<br><br>Defendants. | Case No. 1:21-cv-08665-JHR-AMD<br><br>Motion Date: May 17, 2021<br><br>**<u>ORAL ARGUMENT<br>REQUESTED</u>** |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CRAIG CALLAWAY'S MOTION TO DISMISS THE COMPLAINT

---

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT OF RELEVANT FACTS ....................................................... 1

    *A.*   *Background* ............................................................................ 1

    *B.*   *Procedural History* ................................................................ 3

LEGAL STANDARD ................................................................................. 3

ARGUMENTS ........................................................................................... 4

    I.   The Slander Per Se Claim Does Not Plausibly Allege That Callaway Published His Statements With "Actual Malice" ............... 4

        *A.*   *Overview of Public Official/Public Figure Defamation Law* ............................................................. 4

        *B.*   *The Complaint Omits Factual Allegations of "Actual Malice"* .............................................................. 7

    II.   The Civil Conspiracy Claim Lacks Factual Allegations of Several Key Elements ........................................................ 11

CONCLUSION ........................................................................................ 14

CERTIFICATE OF SERVICE .............................................................. 15

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................... 4, 10

*Baldwin v. Gramiccioni*,
    2017 U.S. Dist. LEXIS 4450 (D.N.J. Jan. 11, 2017)........................................ 13

*Banco Popular N. Am. v. Gandi*,
    184 N.J. 161 (2005) ...................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................... 4, 10

*Board of Ed. of the City of Asbury Park v. Hoek*,
    66 N.J. Super. 231 (App. Div. 1961) ................................................. 13

*Collins v. Taos Bd. of Educ.*,
    893 F. Supp. 2d 1193 (D.N.M. 2012)................................................. 6

*Costello v. Ocean County Observer*,
    136 N.J. 594 (1994) ................................................................... 5-6

*Curtis Publishing Co. v. Butts*,
    388 U.S. 130 (1967)...................................................................... 4

*Dairy Stores, Inc. v. Sentinel Publ'g Co.*,
    104 N.J. 125 (1986) ...................................................................... 5

*DeAngelis v. Hill*,
    180 N.J. 1 (2004) ......................................................................... 5

*Delbridge v. Office of Public Defender*,
    238 N.J. Super. 288 (Law. Div. 1989)............................................... 13

*Dunn v. Gannett New York Newspapers, Inc.*,
    833 F.2d 446 (3d Cir. 1987) .......................................................... 6

*Eli Lilly & Co. v. Roussel Corp.*,
   23 F. Supp. 2d 460 (D.N.J. 1998) ...................................................................... 13

*Ellerbee v. Mills*,
   262 Ga. 516 (1992) ............................................................................................ 7

*Ivan v. County of Middlesex*,
   595 F. Supp. 2d 425 (D.N.J. 2009) .................................................................. 13

*Garrison v. Louisiana*,
   379 U.S. 64 (1964) ............................................................................................. 5

*Gertz v. Robert Welch*,
   418 U.S. 323 (1974) ........................................................................................... 6

*Govito v. West Jersey Health System, Inc.*,
   332 N.J. Super. 293 (App. Div. 2000) ............................................................... 7

*Hill v. Evening News Co.*,
   314 N.J. Super. 545 (App. Div. 1998) ............................................................... 6

*Jee v. New York Post Co.*,
   176 Misc. 2d 253 (N.Y. Cty. Sup. Ct. 1998) .................................................... 7

*Jimenez v. United Fed'n of Teachers*,
   239 A.D.2d 265 (N.Y. App. Div. 2d Dep't. 1997) ............................................ 6

*Johnson v. Robbinsdale Indep. Sch. Dist. No. 281*,
   827 F. Supp. 1439 (D. Minn. 1993) ................................................................... 6

*Kapiloff v. Dunn*,
   27 Md. App. 514 (1975) ..................................................................................... 7

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993) ................................................................................... 3

*Lawrence v. Bauer Publ'g & Printing Ltd.*,
   89 N.J. 451 (1982) ............................................................................................. 5

*Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*,
    955 F. Supp. 2d 317, 325 (D.N.J. 2013) ............................................................ 2

*Lynch v. N.J. Educ. Ass'n*,
    161 N.J. 152 (1999) ........................................................................................ 6

*Mayfield v. NASCAR*,
    674 F.3d 369 (4th Cir. 2012) ........................................................................ 10

*McCafferty v. Newsweek Media Grp., Ltd.*,
    955 F.3d 352 (3d Cir. 2020) ........................................................................ 10

*McCutcheon v. Moran*,
    99 Ill. App. 3d 421 (1981) .............................................................................. 7

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ...................................................................... 10

*Morgan v. Union County Bd. of Chosen Freeholders*,
    268 N.J. Super. 337 (App. Div. 1993) .......................................................... 12

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..................................................................................... 4-5

*Palmer v. Bennington Sch. Dist.*,
    159 Vt. 31 (1992) ........................................................................................... 7

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ........................................................................... 4

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966) ......................................................................................... 6

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) .......................................................................... 10

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ....................................................................................... 5

*Stevens v. Tillman*,
   855 F.2d 394 (7th Cir. 1988) .................................................................. 6

*Williams v. Detroit Bd. of Educ.*,
   523 F. Supp. 2d 602 (E.D. Mich. 2007) ........................................... 6-7

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
   935 F.3d 187 (3d Cir. 2019) ................................................................. 2

## Court Rules

Fed. R. Civ. P. 12(b)(6).............................................................. 2-3, 11, 14

## Other Sources

Restatement (Second) of Torts (1977) ..................................................... 5

## STATEMENT OF RELEVANT FACTS

A.    *Background*

      1.    Kayan Frazier's Criminal Conduct

Kayan Frazier ("Frazier") is Dr. LaQuetta Small's ("Dr. Small") cousin. (Compl., DE 1-2, PageID 10, ¶ 3). Dr. Small is a principal in the Atlantic City Public School District. (*Id.* at ¶ 2). She is also married to Atlantic City's current mayor, Marty Small ("Mayor Small"). (*Id.* at ¶ 1, PageID 13, ¶ 13). The Smalls currently reside at 116 Presbyterian Avenue in Atlantic City, New Jersey. (*Id.* at PageID 10). They appear to have lived there since at least March 2015. (*Id.* at PageID 11, ¶ 4). Frazier resided with the Smalls from March 2015 through November 2, 2015. (*Id.*).

The Atlantic City Public School District hired Frazier as a substitute teacher in late March 2015. (*Id.* at ¶ 3). In February 2017, Dr. Small learned that Frazier "was interacting with a student outside of school hours, in part by picking him up from school in his personal vehicle and hosting him overnight." (*Id.* at ¶ 6). Dr. Small maintains that she reported Frazier's misconduct to the staffing agency that employed Frazier, as well as New Jersey's Department of Children and Families, Division of Child Protection and Permanency. (*Id.*).

Although Frazier was eventually terminated from his position in April 2017, Atlantic City's School Board declined to investigate him. (*Id.* at PageID 12, ¶ 7). The complaint is silent about what additional measures the Smalls pursued to ensure

1

that Frazier no longer worked with minors.  What is clear is that the Division of Child Protection and Permanency subsequently hired Frazier as a caseworker, "in which capacity he had direct access to children." (**Ex. A** – Crim. Compl., Attachment B at ¶ 20).[1]

Federal agents arrested Frazier on July 12, 2019. (**Ex. B** – Crim. Docket Sheet, Text Entry 7/12/19).  The government charged him with receiving child pornography (Count I) ("from in or about March 2015 through on or about April 15, 2019"), distributing child pornography (Count II) ("from on or about September 8, 2018 through on or about November 11, 2018"), and producing child pornography (Count III) ("from in or about March 2017 to on or about April 15, 2019"). (**Ex. A** – Crim. Compl., Attachment A at 1-3).  Frazier has since entered a plea agreement to one count of sexually exploiting a child. (**Ex. C** – Plea Agreement at 1).

2.   Craig Callaway's Interviews

Craig Callaway ("Callaway") is a community activist and political organizer. (Compl., DE 1-2, PageID 13, ¶ 11).  He appeared in two media interviews in October 2020. (*Id.* at PageID 13-14, ¶¶ 12-16).  Both are the focus of this litigation.  Callaway

---

[1] Courts may consider "matters of public record" on Rule 12(b)(6) motions to dismiss the complaint. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019); *see also Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013) (observing that courts "may take judicial notice of proceedings in other courts that relate to matters at issue.") (quotation omitted).

first appeared on Harry Hurley's talk show, broadcast on WPG 95.5 FM, on October 19, 2020. (*Id.* at PageID 13-14, ¶¶ 12-14).  He then appeared on "AC411" on October 26, 2020. (*Id.* at PageID 14, ¶¶ 15-16).  Callaway's alleged statements during both interviews center on three themes: (1) that the Smalls were aware of Frazier's sexual exploitation of children, (2) that Frazier had sexually exploited children in the Smalls' residence, and (3) that the Smalls did not take sufficient steps to thwart his criminal conduct. (*Id.* at PageID 13-14, ¶¶ 13-14, 16).  Callaway's statements are fully quoted in this brief's arguments section.

B.    *Procedural History*

The Smalls commenced this action against Callaway and five unnamed defendants in New Jersey state court.  The complaint alleges causes of action for slander per se (Count 1) and civil conspiracy (Count 2). (*Id.* at PageID 15-16, ¶¶ 19-22).  Callaway timely removed the case to the United States District Court for the District of New Jersey on April 8, 2021. (Not. of Removal, DE 1, PageID 1-7).  He now moves to dismiss the complaint for failure to state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(6) motions challenge the sufficiency of the complaint's factual allegations. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  Dismissal of the complaint is warranted where the plaintiff is unable to plead "enough facts to

3

state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of" a claim for relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## **ARGUMENTS**

I. **The Slander Per Se Claim Does Not Plausibly Allege That Callaway Published His Statements With "Actual Malice"**

  *A.*   *Overview of Public Official/Public Figure Defamation Law*

When the United States Supreme Court issued its landmark decision in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) almost sixty years ago, it federalized state defamation law. The central takeaway from *New York Times* is that the First Amendment to the United States Constitution prohibits "public official[s] from recovering damages for a defamatory falsehood" without proof that the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279-80. This culpable mental state is "a federal rule" known as the "actual malice" standard. *Id.* at 280. It now extends to every state law defamation claim made by a public official or public figure. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 164-65 (1967) (Warren, C.J., concurring) (extending the

4

actual malice standard to public figures); *see also Lawrence v. Bauer Publ'g & Printing Ltd.*, 89 N.J. 451, 462-63 (1982).

In New Jersey, the elements of a defamation claim (for either libel or slander) are (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; (3) fault amounting at least to negligence by the publisher; and (4) damages. *DeAngelis v. Hill*, 180 N.J. 1, 13 (2004) (citing Restatement (Second) of Torts § 558 (1977)).  Adhering to the *New York Times* decision, the New Jersey Supreme Court requires public official/public figure plaintiffs to establish "actual malice." *DeAngelis*, 180 N.J. at 13.

To satisfy the actual malice standard, Plaintiffs must plausibly show that Callaway published his statements with knowledge or reckless disregard of their falsity. *Id.*; *see also New York Times*, 376 U.S. at 279-80.  As for the reckless disregard element, Plaintiffs must plausibly demonstrate that Callaway made his statements with a "high degree of awareness of their probable falsity." *Id.*; *see also Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  Or that he made them with "serious doubts as to the[ir] truth." *Id.*; *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  Actual malice is a subjective test. *Costello v. Ocean County Observer*, 136 N.J. 594, 615 (1994).  It applies to media defendants and private individuals like Callaway. *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 104 N.J. 125, 153 (1986).

"Public officials" are "at the very least . . . those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966); *see also Costello*, 136 N.J. at 613. "Public figures" are those who "have assumed roles of special prominence in the affairs of society." *Gertz v. Robert Welch*, 418 U.S. 323, 345 (1974); *see also Hill v. Evening News Co.*, 314 N.J. Super. 545, 554 (App. Div. 1998).

Mayor Small is a public official because he is the current mayor of Atlantic City. *Dunn v. Gannett New York Newspapers, Inc.*, 833 F.2d 446, 450 (3d Cir. 1987) (holding that mayor's status as a public official "is not, and cannot be, seriously refuted."); *see also Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 169 (1999) ("As a state senator and former mayor of New Brunswick, Senator Lynch was a public official and a public figure."). Dr. Small is either a public official or a public figure since she is the current principal of Atlantic City High School (and formerly the principal of the Pennsylvania Avenue School from 2013 through 2018). *See Stevens v. Tillman*, 855 F.2d 394, 403 (7th Cir. 1988) (holding that public school principal is a public official); *Collins v. Taos Bd. of Educ.*, 893 F. Supp. 2d 1193, 1204-05 (D.N.M. 2012) (same); *Williams v. Detroit Bd. of Educ.*, 523 F. Supp. 2d 602, 610 (E.D. Mich. 2007) (same); *Johnson v. Robbinsdale Indep. Sch. Dist. No. 281*, 827 F. Supp. 1439, 1443 (D. Minn. 1993) (same); *see also Jimenez v. United Fed'n of*

*Teachers*, 239 A.D.2d 265, 266 (N.Y. App. Div. 2d Dep't. 1997) (holding that public school principal is a limited-purpose public figure); *Jee v. New York Post Co.*, 176 Misc. 2d 253, 259 (N.Y. Cty. Sup. Ct. 1998) (public school principal is a public official).[2]  Both of them must, therefore, sufficiently plead that Callaway slandered them with actual malice. *Govito v. West Jersey Health System, Inc.*, 332 N.J. Super. 293, 306 (App. Div. 2000).

> B.   *The Complaint Omits Factual Allegations of "Actual Malice"*

The complaint reads in relevant part:

> 11.   Defendant Craig Callaway is a political organizer. *Defendant Callaway's political affiliations motivated him to falsely accuse Mayor Small and Dr. Small of serious criminal activity involving sexual abuse of children that he knew was false and/or in reckless disregard of the truth*.

> 12.   On October 19, 2020 defendant Callaway appeared on the Harry Hurley talk show, WPG 95.5 FM, . . . Defendant Callaway accused Mayor Small and Dr. Small of consenting to Frazier's rape of children in their home and covering it up.  Thus, defendant Callaway falsely accused the Smalls of committing a crime.

_____

[2] New Jersey's courts have yet to decide whether public school principals are public officials.  Other state jurisdictions diverge on this question. *Compare Palmer v. Bennington Sch. Dist.*, 159 Vt. 31, 37 (1992) ("we agree with the courts holding that a principal is a public official."); *Kapiloff v. Dunn*, 27 Md. App. 514, 524 (1975) (holding that high school principal "was within the 'public figure-public official' classification") *with Ellerbee v. Mills*, 262 Ga. 516, 517 (1992) (holding that public school principal is not a public figure); *McCutcheon v. Moran*, 99 Ill. App. 3d 421, 424 (1981) (same).  As noted above, federal courts are nearly uniform in their opinion that public school principals are public officials, at least insofar as "their defamation claims involve communications relating to their conduct as principals." *Williams*, 523 F. Supp. 2d at 610.

7

13.     During the interview with Hurley, defendant Callaway published the following lies:

- "Marty Small attacked me about my support for Van Drew . . . and I just want to say this . . . Marty, you and your wife should have been focused on protecting and saving children who were in your home, who were savagely attacked and raped in your home."

- "You had the opportunity and obligation to protect the children in the City of Atlantic City in your home and you failed abjectly."

- "By choosing to not do the human thing, they [Mayor Small and Dr. Small] chose to protect themselves and their interest."

14.     Befuddled by defendant Callaway's statements, Hurley cautiously asked if there was actually any evidence that the allegations in the Frazier [criminal] complaint took place in Small's home.   Defendant Callaway completely avoided Hurley's question . . . Hurley repeated himself and defendant Callaway hesitantly responded as follows:

"Yes . . . it's public, it's right there . . . it happened, it actually happened . . . that's the reason the monster was removed from their home."

15.     One week later on October 26, 2020, defendant Callaway appeared on a live "AC 411" interview and demonstrated *that he maliciously lied during [his previous] interview on Harry Hurley*.   Defendant Callaway also published additional lies about the Smalls further accusing them of knowingly allowing Frazier to sexually abuse children.

16.     Defendant Callaway began the AC 411 interview by stating that it was "public information" that "LaQuetta Small caught Frazier with a child."   Then he recited all of the different homes where Frazier could have raped children, particularly

8

focusing on Frazier's 2200 Hamilton Ave. and Somers Point apartments listed in the Frazier [criminal] complaint even though he stated it was "public record" that children were raped in the Small home. Defendant Callaway also stated that "Marty allowed Frazier to attack children time after time in Somers Point" and that "Marty caught Frazier with a child." Finally, he claimed Dr. Small did nothing as Principal.

17. *The criminal accusations that defendant Callaway published against the Smalls during both interviews were false and defendant Callaway knew they were false and/or in reckless disregard of the truth.*

18. Frazier moved out of the Small home in August [*sic*] 2015 and thereafter lived at 2200 Hamilton Avenue and in Somers Point. Counts II and III of the Frazier [criminal] Complaint charge production and distribution of child pornography, respectively, beginning in March 2017 through April 15, 2019. These dates are years after Frazier vacated plaintiffs' residence.

<u>COUNT 1</u>
**(Slander Per Se)**

19. *Defendant Callaway, at all times relevant hereto, knowingly published false information accusing Mayor Small and Dr. Small of a crime, and/or published such criminal accusations in reckless disregard of the truth.*

(Compl., DE 1-2, PageID 13-15, ¶¶ 11-19) (emphasis added).

Assuming for argument's sake that Callaway's statements are demonstrably false (which they are not), none of the complaint's allegations are sufficient to plausibly establish that Callaway published his statements with knowledge or reckless disregard of their falsity, *i.e.*, actual malice. The complaint instead recites legal catchphrases for actual malice without any accompanying factual basis to

9

support the conclusion that Callaway knew his statements were false or that he recklessly disregarded their falsity. *See McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 360 (3d Cir. 2020) (holding that limited-purpose public figure did "not plead facts that suggest actual malice" where he failed to allege that defendant "accuse[d] him of breaking the law when it knew he was innocent, or published facts contrary to information it otherwise knew."); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703-04 (11th Cir. 2016) (affirming dismissal of defamation claim where public figure plaintiff alleged "in a purely conclusory manner that the defendants were 'reckless' in publishing the article."); *Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012) (affirming dismissal of defamation claim where public figure plaintiff merely recited the actual malice standard); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (affirming dismissal of public official defamation claim containing actual malice "buzzwords," but not "backed by well-pled facts.").  Asserting bare legal conclusions, as Plaintiffs have done, cannot satisfy *Iqbal* and *Twombly*'s plausibility test.

Nor does appending a copy of Frazier's November 2, 2015 lease plausibly demonstrate that Callaway somehow knew Frazier had vacated Plaintiffs' home in November 2015. (Compl., DE 1-2, PageID 19-23).  Even supposing Callaway was aware of Frazier's residence change, Plaintiffs never assert (1) that Frazier did not access their house once he moved out, (2) that Frazier did not access their house

when minors were present, or (3) that Callaway knew or recklessly disregarded information about (1) and (2).  In fact, as most recently as two weeks ago, Atlantic County's voter history database listed Frazier's residence as "116 N. Presbyterian Avenue, Atlantic City 08401" – *the same as Plaintiffs' home address*.[3] (**Ex. F** – Atlantic County Voter History Records; Compl., DE 1-2, Page ID # 10, 19).

The timeframes listed in Counts II and III to the criminal complaint (March 2017 through April 15, 2019) do not either establish that Frazier refrained from sexually exploiting children beforehand or that he never exploited them at Plaintiffs' residence.  Perhaps he did, but the government declined to prosecute him for these uncharged offenses because it possessed insufficient evidence to convict him.

In all, the complaint does not allege sufficient facts to plausibly show that Callaway published his statements about Plaintiffs with actual malice.  And the slander per se claim cannot survive Rule 12(b)(6) dismissal without them.

## II.   The Civil Conspiracy Claim Lacks Factual Allegations of Several Key Elements

Under New Jersey law, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by

---

[3] Count I in Frazier's criminal complaint accuses him of receiving child pornography on his mobile phone and flash drives "[f]rom in or about March 2015 through on or about April 15, 2019." (**Ex. A** – Crim. Compl., Attachment A at 1).  Plaintiffs acknowledge that Frazier was living with them during a significant portion of this time – from March 2015 through November 2, 2015. (Compl., DE 1-2, PageID 11, ¶ 4).

unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (quotation omitted). "It is enough [for liability] if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." *Id.* (quotation omitted). "[T]he gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." *Id.* at 177-78 (quotation omitted); *see also Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993).

The complaint's civil conspiracy allegations comprise one substantive paragraph:

> 22. In the months leading up to the November 2020 special election, defendant Callaway was encouraged by and collaborated with John Does 1-5 to publish information regarding Mayor Small and Dr. Small that they knew was false and/or in reckless disregard of the truth. The identities of those persons are currently unknown and unconfirmed.

(Compl., DE 1-2, Page ID # 15, ¶ 22).

The claim falters on three grounds. *First*, Plaintiffs fail to plausibly allege an "underlying wrong" that provides its own "right of action." As already discussed, Plaintiffs' underlying slander per se claim fails to state a plausible claim for relief.

*Second*, aside from generically asserting that the unnamed defendants "encouraged" and "collaborated with" Callaway, Plaintiffs do not specify any "overt

12

acts" the unnamed defendants allegedly committed in furtherance of the conspiracy. *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496-97 (D.N.J. 1998) (holding that a New Jersey civil conspiracy plaintiff "must also point to an overt act of one or more of the conspirators in furtherance of the conspiracy"); *see also Board of Ed. of the City of Asbury Park v. Hoek*, 66 N.J. Super. 231, 241 (App. Div. 1961), *rev'd in part on other grounds*, 38 N.J. 213 (1962); *Delbridge v. Office of Public Defender*, 238 N.J. Super. 288, 313 (Law. Div. 1989) ("The law requires that plaintiffs demonstrate the existence of an overt act of one or more of the conspirators in furtherance of the conspiracy.").

And *third*, Plaintiffs omit any identifying information – either by name or description – of the unnamed defendants who allegedly conspired with Callaway. *See Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009) (dismissing civil rights conspiracy claim where the complaint "contain[ed] bare allegations of a conspiracy to discriminate without specific factual allegations identifying the conspirators or the particular actions taken by the conspirators to accomplish their discriminatory goal."); *see also Baldwin v. Gramiccioni*, Case No. 16-1675, 2017 U.S. Dist. LEXIS 4450, at *29 (D.N.J. Jan. 11, 2017) (dismissing civil rights conspiracy claim where the complaint asserted "general allegations" of an agreement between the conspirators and "failed to expressly identify the conspirators."); *Delbridge*, 238 N.J. Super. at 316 (same).  Without any one of these elements,

Plaintiffs cannot state an actionable civil conspiracy claim.  The absence of *all* three

certainly warrants Rule 12(b)(6) dismissal.

## <u>CONCLUSION</u>

For the above reasons, Callaway respectfully requests that the Court grant his

motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).


<u>/s/ *Daniel W. Weininger*</u>
Daniel W. Weininger (DW-5824)
Lento Law Group, P.C.
3000 Atrium Way, Suite 200
Mount Laurel, NJ 08054
Tel: (856) 652-2000
Fax: (856) 375-1010
dwweininger@lentolawgroup.com
weiningerlaw@gmail.com

*Counsel for Defendant Craig Callaway*


Dated: April 15, 2021

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 15, 2021, I electronically filed the foregoing

document with the Clerk of the Court and served Plaintiffs through the CM/ECF

system.

/s/ *Daniel W. Weininger*
Daniel W. Weininger

*Counsel for Defendant Craig*
*Callaway*
