Edwin J. Jacobs, Jr., Esquire (NJ Attorney I.D.#2714011971)
JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys at Law
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
ejacobs@jacobsbarbone.law
Attorneys for Plaintiffs Marty Small and LaQuetta Small

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| MARTY SMALL and LaQUETTA SMALL, | Case No.: 1:21-cv-08665-JHR-AMD |
| Plaintiffs, | |
| | Civil Action |
| vs. | |
| | PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR REMAND TO THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, CIVIL PART, ATLANTIC COUNTY PURSUANT TO 28 U.S.C. § 1447(c) |
| CRAIG CALLAWAY and JOHN DOES 1-5 | |
| Defendants. | |

---

On the Brief:

    Edwin J. Jacobs, Jr.

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES                                    ii

PROCEDURAL HISTORY                                     1

STATEMENT OF FACTS                                     2

LEGAL ARGUMENT                                         4

    POINT I                                           4

PURSUANT TO 28 U.S.C. § 1447 THE ACTION MUST BE
REMANDED TO THE STATE COURT BECAUSE OF A COMPLETE
LACK OF FEDERAL SUBJECT MATTER JURISDICTION

    POINT II                                          6

DEFENDANT   CALLAWAY'S   ACTUAL   MALICE   THEORY   IS
FRIVOLOUS

    POINT III                                         7

ACTUAL MALICE IS NOT A FEDERAL LAW AT THE FOREFRONT
OF THE CASE AND IS A COLLATERAL, PERIPHERAL, AND
REMOTE ELEMENT OF DEFAMATION CAPABLE OF RESOLVE BY
THE STATE COURT

CONCLUSION                                            9

TABLE OF AUTHORITIES

CASE(S):                                                          PAGE

Palmer v. University of Medicine & Dentistry of New
Jersey, 605 F. Supp. 2d 624 (D.N.J. 2009)(quoting
Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)              5

Westmoreland Hospital Association v. Blue Cross of
Western PA, 605 F. 2d 119 (3d Cir. 1979)                            5


RULE(S) & STATUTE(S):

28 U.S.C. § 1331                                                    4
28 U.S.C. § 1441                                                    4
28 U.S.C. § 1447(c)                                                4,6

PROCEDURAL HISTORY

On January 11, 2021, Plaintiffs Marty Small and LaQuetta Small filed a Tort Claim Notice with the Attorney General of the State of New Jersey and the Superintendent of the Atlantic City School District, namely Barry Caldwell, advising each of Plaintiffs' claims against the Atlantic City Board of Education for the retaliatory conduct of certain Board members, namely Board President John Devlin, acting in concert with Defendant Craig Callaway to defame Plaintiffs. (Exhibit A).

On March 15, 2021, Plaintiffs filed their Complaint against Defendant Craig Callaway and John Does 1-5 in the Superior Court of New Jersey, Atlantic County, Law Division/Civil Part under Docket No. ATL-L-000862-21. (Exhibit B).

On or about March 25, 2021, Defendant Callaway was served with a copy of the Summons and Complaint. (See Defendant's Notice of Removal, ¶ 3).

On April 8, 2021, Defendant Callaway, through his attorney Daniel W. Weininger, Esquire of the Lento Law Group, P.C., filed a Notice of Removal in the United States District Court, District of New Jersey, Camden Vicinage generating Case No. 1:21-cv-08665. (Exhibit C).

<u>STATEMENT OF FACTS</u>

Plaintiffs Marty Small and LaQuetta Small rely on and incorporate here paragraphs 1 through 22 of their Complaint. (Exhibit B). Plaintiffs summarize those paragraphs as follows:

On October 19, 2020, Defendant Callaway called into the Harry Hurley talk show, WPG 95.5 FM, and published multiple lies to the 1.8 million citizens across the seven South Jersey counties that make up Hurley's audience. Defendant Callaway accused Plaintiffs of consenting to the rape of children in their home by LaQuetta Small's cousin, Kayan Frazier, and covering it up. Thus, Defendant Callaway falsely accused the Plaintiffs of committing a crime.

During his interview with Hurley, Defendant Callaway published the following lies:

> "Marty Small attacked me about my support for Van Drew ... and I just want to say this ... **Marty, you and your wife should have been focused on protecting and saving children who were in your home, who were savagely attacked and raped in your home".**

After Hurley asked if there was actually any evidence that the allegations in the Federal Frazier complaint took place in the Small's home, Defendant Callaway responded:

> "yes ... its **public,** it's right there ... it happened, it actually happened ... that's the reason the monster was removed from their home".

Defendant Callaway provided no factual support for his statements that children were raped in Plaintiffs' home nor did he explain where it was "public" record. Both statements were false.

2

One week later, on October 26, 2020, Defendant Callaway appeared for a live AC 411 interview and stated the following:

1.  It was "public information" that "LaQuetta Small caught Frazier with a child";

2.  "Marty allowed Frazier to attack children time after time in Somers Point";

3.  "Marty caught Frazier with a child";

4.  "Frazier was raping children in his 2200 Hamilton Avenue apartment and his Somers Point apartment"; and

5.  Dr. Small did nothing as Principal.

All of this information was false.

Plaintiff LaQuetta Small's cousin, Kayan Frazier, moved out of the Small home and into his own apartment by November of 2015. Counts II and III of the Frazier Criminal Complaint charge production and distribution of child pornography, respectively, beginning March 2017 through April 15, 2019. These dates are years after Frazier vacated Plaintiffs' residence. So Frazier was not "raping" kids in the Small home at a time he did not live there. Further, when Plaintiff LaQuetta Small learned of Frazier's inappropriate conduct involving a student two years after Frazier moved into his own apartment, she reported him and sought "removal". And she reported her cousin on more than one occasion.

Plaintiffs have sued Defendant Callaway for slander per se, a State law tort presenting no Federal question. Like common law slander, slander per se requires proof of actual malice when a

3

public official is involved.  Actual malice is a single element

presenting no federal question.  Defendant Callaway's Notice of

Removal to the District Court is a frivolous pleading and the Court

should remand the matter to the Superior Court of New Jersey, Law

Division, Civil Part, Atlantic County.

<u>LEGAL ARGUMENT</u>

<u>POINT I</u>

PURSUANT TO 28 <u>U.S.C.</u> § 1447 THE ACTION MUST BE REMANDED
TO THE STATE COURT BECAUSE OF A COMPLETE LACK OF FEDERAL
SUJBECT MATTER JURISDICTION.

Defendant Callaway relies on 28 <u>U.S.C.</u> §§ 1331 and 1441(a) as

authority to remove Plaintiffs' defamation claim to the Federal

District Court of New Jersey.  Those sections allow for removal if

the District Court would have had original jurisdiction over the

action.  Defendant Callaway erroneously asserts that the District

Court has federal question jurisdiction over this matter.  There

is no federal question and the case should be remanded pursuant to

28 <u>U.S.C.</u> § 1447(c), which states:

> A motion to remand the case on the basis of any defect
> other than lack of subject matter jurisdiction must be
> made within 30 days after the filing of removal under
> § 1446(a).  **If at any time before the final judgment it
> appears that the District Court lacks subject matter
> jurisdiction, the case shall be remanded.**  An Order
> remanding the case may require a payment of just costs
> and actual expenses, including attorneys' fees, incurred
> as a result of the removal.

The presence or absence of federal question jurisdiction is

governed by the well pleaded complaint rule, which provides that

federal question jurisdiction exists <u>only</u> when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  <u>Palmer v. University of Medicine & Dentistry of New Jersey</u>, 605 F. Supp. 2d 624 (D.N.J. 2009) (quoting <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)).  It is not enough that federal question is or may be raised as a defense; the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.  <u>Id.</u>  The federal law must be in the forefront of the case <u>and</u> <u>not</u> <u>collateral</u>, <u>peripheral</u> or <u>remote</u>.  <u>Id.</u>  Finally, the power reserved to the States under the Constitution to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution.  <u>Westmoreland Hospital Association v. Blue Cross of Western PA</u>, 605 F. 2d 119 (3d. Cir. 1979).

Plaintiffs filed a two count complaint alleging that Defendant Callaway 1) slandered their name by accusing them of a crime (Count I) and 2) conspired with certain John Does to accomplish such slandering.  (Count II).  Neither Count I nor Count II of Plaintiffs' complaint raises a federal question.  Defendant Callaway argues that because a public official must prove actual malice, i.e., that the publisher knew the statement he published was false and/or published the statement in reckless disregard for the truth, a federal question is presented.  There is no case that

says this.  Were Defendant correct, any cause of action requiring proof of actual malice as an element could be removed to the Federal District Court.  That is preposterous.

<u>POINT II</u>

DEFENDANT CALLAWAY'S ACTUAL MALICE THEORY IS FRIVOLOUS.

At page 2, paragraph 6 of his Notice of Removal, Defendant Callaway represents the following:

> Since Plaintiffs are both public officials/figures they must establish, among other things, that Callaway slandered them with "actual malice," otherwise known as "constitutional malice."  See, <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 279-280 (1964) ...

This Court will not find a single blurb in any text or any footnote in that 50 page case that recites the words "constitutional malice".  It is a term of art concocted by Defendant Callaway in a frivolous attempt to remove this case to the District Court. And the Court should penalize the Defendant by requiring his payment of just costs and expenses, including attorneys' fees, incurred as a result of the removal. 28 <u>U.S.C.</u> 1447(c).

Furthermore, at page 3, paragraph 7 the Notice of Removal, Defendant Callaway states:

> The actual malice standard derives from the First and Fourteenth Amendments to the United States Constitution. <u>New York Times</u>, 376 U.S. at 283 ("we conclude such a privilege is required by the First and the Fourteenth Amendments").  It is a "federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made . . . with knowledge that it was false or with reckless disregard of whether

6

it was false or not." Id. at 279-280; see also Curtis
Publishing Co. v. Butts, 388 U.S. 130,163-65 (1967)
(Warren, CJ, concurring) (applying the actual malice
standard of public figures).

Defendant Callaway is confused.  The privilege that is recognized

by the First and the Fourteenth Amendments is the citizen privilege

to critique a government official and avoid liability unless the

citizen published information knowing that it was false and/or in

reckless disregard of the truth.  None of the cases that Defendant

Callaway relies on state that actual malice is a privilege

requiring disposition in Federal District Court.  And as

aforenoted, it is difficult to imagine that every cause of action

requiring actual malice as an element be heard in Federal Court.

## POINT III

ACTUAL MALICE IS NOT A FEDERAL LAW AT THE FOREFRONT OF
THE CASE AND IS A COLLATERAL, PERIPHERAL, AND REMOTE
ELEMENT OF DEFAMATION CAPABLE OF RESOLVE BY THE STATE
COURT.

At page 3, paragraph 8 of Defendant's Notice of Removal,

Defendant states:

Because Plaintiffs must establish "actual malice" as an
element of their slander per se claim, and since the
actual malice standard is "required by the First and
Fourteenth Amendments," the complaint "necessarily
raises" a federal question that is "actually disputed,
substantial, and capable of resolution in Federal Court
without disrupting the federal-state balance approved by
Congress." Gunn, 568 U.S. at 258.

The Complaint does not raise a federal question.  What it does do

is raise a state law claim for defamation of a public official,

which requires proof of actual malice, and Defendant Callaway has frivolously couched actual malice as "constitutional malice". That phrase simply does not exist.  Defendant is simply wrong that the element of actual malice is a "privilege" requiring disposition in Federal Court.

Further proof that Defendant Callaway's actual malice theory fails is Model Civil Jury Charge 3.11A on the New Jersey Courts portal (eCourts).  Although not specifically titled slander per se, the charge requires that a public official prove five elements by clear and convincing evidence to prevail.  The five elements are:

1.    That the Defendant made a defamatory statement of facts;

2.    Concerning Plaintiff;

3.    Which was false;

4.    Which was communicated to at least one person other than Plaintiff; and

5.    **With Defendant's actual knowledge that the statement was false or with Defendant's reckless disregard of the statement's truth or falsity.**

The charge goes on to explain each of the five elements.  The fifth element, that the Defendant communicate the statement to others with actual knowledge that it was false or in reckless disregard of the truth, is followed by footnote 11 and cites to "actual malice".  That footnote is supported by a total of eight cases: three from the Supreme Court of the United States and five from

8

the New Jersey State Courts, either the Appellate Division or the State Supreme Court.  So it is clear that the New Jersey State Courts are more than capable of determining whether actual malice exists and have done exactly that.  The actual malice element presents no federal question and there is no basis to hear this case in District Court.

CONCLUSION

For all the above reasons, the Court should remand this case to the Superior Court of Atlantic County.

JACOBS & BARBONE, P.A.


/s/ Edwin J. Jacobs, Jr.


Dated:  4/20/21

# EXHIBIT A

## JACOBS & BARBONE, P.A.

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

EDWIN J. JACOBS, JR.
ejacobs@jacobsbarbone.law

LOUIS M. BARBONE
lbarbone@jacobsbarbone.law

JOEL S. JUFFE
jjuffe@jacobsbarbone.law

DAVID CASTALDI
dcastaldi@jacobsbarbone.law

1125 PACIFIC AVENUE
ATLANTIC CITY, NEW JERSEY 08401
PHONE: (609) 348-1125
FAX: (609) 348-3774
WEBSITE: WWW.JACOBSBARBONE.LAW

January 11, 2021

**Via Certified Mail, R.R.R. and Regular Mail**

Gurbir S. Grewal, Attorney General
Office of the Attorney General
Department of Law & Public Safety
Hughes Justice Complex
25 W. Market Street
P.O. Box 080
Trenton, New Jersey 08625

**Via Certified Mail, R.R.R. and Regular Mail**

Barry Caldwell, Superintendent
Atlantic City Board of Education
1300 Atlantic Avenue, 5th Floor
Atlantic City, New Jersey 08401

    Re:    Marty Small and LaQuetta Small
            Our File No. 16,993

Dear Attorney General Grewal & Superintendent Caldwell:

Please be advised this office represents Marty Small and LaQuetta Small in a potential civil lawsuit to be filed in the Superior Court of New Jersey, Law Division, Civil Part, Atlantic County or in the Federal District Court.

This notice is being forwarded to you in accordance with the terms of N.J.S.A. 56:8-4 and N.J.S.A. 59:8-7, and is intended to advise you of my clients' claims against the Atlantic City Board of Education, namely for the conduct of particular Board Members in announcing and holding a special Board meeting to address alleged illegal conduct of my clients which defamed them and was conducted to defame them and retaliate against them for political purposes.  I offer the following information with respect to that claim.

    1.    My clients' full names and address are as follows:

        Marty Small and LaQuetta Small
        116 Presbyterian Avenue
        Atlantic City, New Jersey 08401

2. Any and all notices regarding this claim are to be sent to me at the following address:

Edwin J. Jacobs, Jr., Esquire
Jacobs & Barbone, P.A.
1125 Pacific Avenue
Atlantic City, New Jersey 08401

3. This claim arises from the retaliatory conduct of certain members of the Atlantic City Board of Education to defame my clients' good names and reputations in the Atlantic City and Atlantic County communities, and is the product of political retaliation.  We have evidence that certain Board Members conspired with political organizer Craig Callaway to defame the good names and reputations of my clients immediately preceding the November 2020 special election which involved Mayor Marty Small.  Certain members of the Board conspired with Callaway to impute allegations of criminal conduct on my clients for the criminal conduct of LaQuetta Small's cousin, Kayan Frazier.  All of this information regarding Kayan Frazier had been known by certain members of the Board in 2017 or 2018.  But in concert with Callaway, those members of the Board denied any knowledge of the criminal acts of Frazier and caused a special Board meeting to take place on October 13, 2020 to publicize alleged criminal activity by my clients in "covering up", "not disclosing" or "assisting" the child molesting conduct of Frazier, all of which is wholly false.  One week after that special meeting, Craig Callaway appeared on two live broadcasts and defamed the Smalls:  October 19, 2020 and October 26, 2020. The Board engaged in a conspiracy to defame the Small name and harm Mayor Marty Small's chances of winning the November 2020 Special Election.

4. My clients have suffered injuries and damages to their good name and reputation, standing in the community, personal humiliation, mental anguish and business economic losses as a result of these defamatory schemes.

5. The public entities and/or employees alleged to have contributed to my clients' injuries, damages and losses are those individuals on the Atlantic City Board of Education, including but not limited to Board President John Devlin, and any and all agents and members of the Board who caused and otherwise facilitated publication of defamatory statements that have impaired my clients' reputation and standing in the community by facilitating the disclosure of false and untrue information knowingly and/or in reckless disregard of such falsity.

6.   At this time, my clients' claims remain under investigation by my office and the full extent of their claims, injuries and damages is yet to be determined. As such I reserve the right to supplement the claim accordingly.

Very truly yours,

JACOBS & BARBONE, P.A.

Edwin J. Jacobs, Jr.

EJJ:lsg
cc:   Marty & LaQuetta Small

3

# EXHIBIT B

Edwin J. Jacobs, Jr., Esquire (NJ Attorney I.D.#2714011971)
JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys at Law
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
ejacobs@jacobsbarbone.law
Attorneys for Plaintiffs Marty Small and LaQuetta Small

| | |
|---|---|
| MARTY SMALL and LaQUETTA SMALL, | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| Plaintiffs, | ATLANTIC COUNTY |
| | |
| vs. | DOCKET NO. |
| | |
| | Civil Action |
| CRAIG CALLAWAY and JOHN DOES 1-5 | |
| | **COMPLAINT, JURY DEMAND AND** |
| Defendants. | **DESIGNATION OF TRIAL COUNSEL** |

Plaintiffs, Marty Small and LaQuetta Small, residing at 116 Presbyterian Avenue, Atlantic City, Atlantic County, New Jersey, complaining against the defendants, say as follows:

## BACKGROUND

1.    Plaintiff Marty Small ("Mayor Small") is currently the Mayor of the City of Atlantic City. He was re-elected to a one-year term following the City's November 2020 Special Election.

2.    Plaintiff LaQuetta Small ("Dr. Small") is the Principal of Atlantic City High School.   Prior to her assuming that role in 2019, Dr. Small was the Principal of the Pennsylvania Avenue School in Atlantic City, New Jersey from 2013 to 2018.

3.    While Dr. Small was serving as the Principal of the Pennsylvania Avenue School, the Atlantic City School District hired her cousin, Kayan Frazier, as a substitute

teacher.  Frazier filled in at multiple schools throughout the district including the Pennsylvania Avenue School and the Board approved him for hire on March 30, 2015.

4.  When the Board approved Frazier in March of 2015 he was living at the Small residence. But as of November 2, 2015, Frazier lived in his own residence located at 2200 Hamilton Avenue, Apartment A, Atlantic City, New Jersey.  The Atlantic City Board of Education issued a W-2 to Frazier for the 2015-2016 year which confirmed that address.  His lease there started in August of 2015. **(Exhibit A)**.

5.  From the time that he was hired until his termination, Frazier was sent to the following schools as a substitute teacher:  Uptown Complex, Sovereign Avenue School, Dr. Martin Luther King, Jr. School, Texas Avenue School, Richmond Avenue School, Brighton Avenue School and Pennsylvania Avenue School.  For two years, Frazier performed without any apparent issues.

6.  However in February of 2017, Dr. Small learned that Frazier was interacting with a student outside of school hours, in part by picking him up from school in his personal vehicle and hosting him overnight.  Dr. Small reported Frazier's unprofessional conduct to the proper authorities:

    (a)    On February 24, 2017, Dr. Small filed a report with the Division of Child Protection and Permanency and detailed the unprofessional conduct of Frazier;

    (b)    Simultaneously, Dr. Small completed a Source4Teachers incident report form that cited Frazier for unprofessional conduct and recommended that he be "removed from school";

    (c)    Dr. Small took an additional step and contacted the mother of the student that Frazier was spending time with outside of school.  The student's mother told Dr. Small that Frazier was "helping out";

    (d)    On March 15, 2017, Dr. Small sent follow-up correspondence to the District Manager of Source4Teachers, Wesley Wallace. She

believed the student was still staying overnight at Frazier's home and repeated that Frazier's conduct was "inappropriate"; and

(e)     When Dr. Small received a response from Mr. Wallace, she immediately sent another letter disclosing new information regarding Frazier texting a student.

7.      Notwithstanding Dr. Small's reporting, Frazier was placed at five (5) schools in the Atlantic City School District over the course of thirteen (13) days in the month of March 2017. On April 3, 2017, Frazier was terminated from his position as a substitute teacher in the Atlantic City School District. No formal investigation was conducted by the Board at that time.

<u>The Federal Criminal Complaint Signed Against Frazier</u>

8.      Beginning in February of 2019, the Atlantic County Prosecutor's Office began investigating Kayan Frazier for sexual misconduct involving minors. On April 15, 2019, the Atlantic County Prosecutor's Office charged Frazier with unlawful possession of child pornography.

9.      Thereafter, the United States began an investigation into Frazier and obtained federal warrants to search Frazier's apartment and car on May 23, 2019. On July 3, 2019, a criminal complaint was filed against Frazier in the Federal District Court of New Jersey. Count I of the Complaint charged "receipt of child pornography" from March of 2015 through April 15, 2019. Count II charged "distribution of child pornography" from September 8, 2018 through November 11, 2018. Count III charged "production of child pornography" from March 2017 to April 15, 2019.

10.     Counts II and III of the Complaint against Frazier establish a time frame of March 2017 to April 15, 2019, when Frazier did not live with the Smalls. The only relevant

3

locations regarding Counts II and III in the Complaint are 2200 Hamilton Avenue, Atlantic City, NJ and Somers Point, NJ, both of which were leased by Frazier.

<u>Defendant Craig Callaway's Defamatory Statements</u>

11.     Defendant Craig Callaway is a political organizer. Defendant Callaway's political affiliations motivated him to falsely accuse Mayor Small and Dr. Small of serious criminal activity involving sexual abuse of children that he knew was false and/or in reckless disregard of the truth.

12.     On October 19, 2020, defendant Callaway appeared on the Harry Hurley talk show, WPG 95.5 FM, and published multiple lies to the 1.8 million citizens across the seven (7) counties in South Jersey that make-up Hurley's audience. Defendant Callaway accused Mayor Small and Dr. Small of consenting to Frazier's rape of children in their home and covering it up. Thus, defendant Callaway falsely accused the Smalls of committing a crime.

13.     During the interview with Hurley, defendant Callaway published the following lies:

- "Marty Small attacked me about my support for Van Drew ... and I just want to say this ... Marty, you and your wife should have been focused on protecting and saving children who were in your home, who were savagely attacked and raped in your home."

- "You had the opportunity and obligation to protect the children in the City of Atlantic City in your home and you failed abjectly."

- "By choosing to not do the human thing, they [Mayor Small and Dr. Small] chose to protect themselves and their interest."

14.     Befuddled by defendant Callaway's statements, Hurley cautiously asked if there was actually any evidence that the allegations in the Frazier complaint took place in the Small's home. Defendant Callaway completely avoided Hurley's question. But 25

4

seconds later, Hurley repeated himself and defendant Callaway hesitantly responded as follows:

> "Yes … it's public, it's right there … it happened, it actually happened … that's the reason the monster was removed from their home".

Defendant Callaway provided no factual support for his statements that children were raped in the Small's home nor did he explain where it was "public record".

15.   One week later on October 26, 2020, defendant Callaway appeared on a live "AC 411" interview and demonstrated that he maliciously lied during the October 19, 2020 interview on Harry Hurley. Defendant Callaway also published additional lies about the Smalls further accusing them of knowingly allowing Frazier to sexually abuse children.

16.   Defendant Callaway began the AC 411 interview by stating that it was "public information" that "LaQuetta Small caught Frazier with a child." Then he recited all of the different homes where Frazier could have raped children, particularly focusing on Frazier's 2200 Hamilton Ave. and Somers Point apartments listed in the Frazier complaint even though he stated it was "public record" that children were raped in the Small home. Defendant Callaway also stated that "Marty allowed Frazier to attack children time after time in Somers Point" and that "Marty caught Frazier with a child." Finally, he claimed Dr. Small did nothing as Principal.

17.   The criminal accusations that defendant Callaway published against the Smalls during both interviews were false and defendant Callaway knew they were false and/or in reckless disregard of the truth.

18.   Frazier moved out of the Small home in August of 2015 and thereafter lived at 2200 Hamilton Avenue and in Somers Point. Counts II and III of the Frazier Complaint

5

charge production and distribution of child pornography, respectively, beginning March 2017 through April 15, 2019.  These dates are years after Frazier vacated plaintiffs' residence.

### COUNT 1
### (Slander Per Se)

19.     Defendant Callaway, at all times relevant hereto, knowingly published false information accusing Mayor Small and Dr. Small of a crime, and/or published such criminal accusations in reckless disregard of the truth.

WHEREFORE, plaintiffs demand judgment against defendant Callaway for the publication of defamatory statements accusing the plaintiffs of a morally reprehensible crime as follows:

A.     Compensatory damages;

B.     Punitive damages; and

C.     Any other relief which the Court deems equitable and just.

### COUNT 2
### (Civil Conspiracy)

20.     Plaintiffs repeat and incorporate all previous allegations as if fully set forth herein.

21.     Civil conspiracy is an agreement by two or more persons to commit a wrongful act, which agreement may be made orally, in writing, or may be implied by the conduct of the parties.

22.     In the months leading up to the November 2020 special election, defendant Callaway was encouraged by and collaborated with John Does 1-5 to publish information regarding Mayor Small and Dr. Small that they knew was false and/or in reckless

disregard of the truth. The identities of the those persons are currently unknown and unconfirmed.

WHEREFORE, plaintiffs demand judgment against defendant Callaway and John Does 1-5 for conspiring to defame Mayor Small and Dr. Small by accusing them of a crime as follows:

    A.    Compensatory damages;

    B.    Punitive damages; and

    C.    Any other relief which the Court deems equitable and just.

### RULE 4:5-1 CERTIFICATION

Pursuant to R. 4:5-1, I hereby certify that to the best of my knowledge, information. and belief, the matter in controversy is not the subject of any other action pending in any Court or arbitration proceedings, and no other action is contemplated.  I know of no other parties that should be joined herein.

### CERTIFICATION OF COMPLIANCE WITH R. 1:38-7(c)

I certify the Confidential Personal Identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

### JURY DEMAND PURSUANT TO R. 1:8-1(b) and R. 4:35-1

Plaintiffs, Marty Small and LaQuetta Small, hereby request trial by jury as to all issues herein.

7

## DESIGNATION OF TRIAL COUNSEL 4:5-1(c)

Plaintiffs, Marty Small and LaQuetta Small, hereby designate Louis M. Barbone,

Esquire as trial counsel in the within matter.

JACOBS & BARBONE, P.A.

Edwin J. Jacobs, Esquire

Dated:  3-9-21

8

# EXHIBIT A

# LEASE AGREEMENT

### IMPORTANT PHONE NUMBERS:

**MAIL PAYMENTS TO:**
HAMILTON VENICE PARK, LLC
P.O. BOX 1667
LINDEN, NJ 07036

**MANAGEMENT OFFICE: 732-340-0100**
MAINTENANCE: 609-348-5630
SUPERINTENDENT: 609-348-5630

Lease, made this   **2ND DAY OF NOVEMBER, 2015,** whereby **HAMILTON VENICE APTS., LLC,** Landlord,

Lessor, and   **KA'YAN AND SHARNICE FRAZIER,** TENANTS

now residing at   **116 N. PRESBYTERIAN AVENUE, ATLANTIC CITY, NJ 08401**

take the apartment #A in the building at **2200 HAMILTON AVENUE, ATLANTIC CITY, NJ 08401**

to be occupied as a strictly private dwelling apartment by one family of  **TWO** person/s for a period of **ONE YEAR**
**Occupants:**   **KA'YAN FRAZIER AGE: 23  SHARNICE FRAZIER AGE: 23**

From **NOVEMBER 2, 2015, THROUGH OCTOBER 31, 2016** at the yearly rent of **$9,600.00** payable in equal monthly installments of **$800.00** in advance on the *1st day of each month*. Tenant agrees to pay a *late charge of $25.00* on any rent payment remaining unpaid for a period of *5 days after such payment becomes due*, and shall become immediately due as additional rent. Payment by tenant or receipt by landlord of a lesser amount than the monthly rental provided in this agreement shall be applied to the earliest unpaid rent. If rent not paid by *10th day of any month*, legal action will be taken.

1.   Landlord requires a security deposit in the amount of **$800.00.** Which will be deposited in an interest bearing escrow account at the current interest rate of .45% at The Provident Bank, P O Box 1001, Iselin, NJ  08830? Said security shall not be applied as rent to any month by the tenant or the landlord.

**Renewals and Changes in the Lease:** The Landlord may offer the tenant a new lease to take effect at the end of the lease. The new lease may include reasonable changes. The tenant will have Thirty days (30) before the Lease Term ends to notify Landlord in writing of their acceptance or decision to vacate the premises at the end of the Lease. Tenant must give landlord 30 days notice, by certified mail, of intention not to renew tenancy or be liable for one month's additional rent. If the notice not to renew the Tenancy is not given within the time as agreed, this lease shall, at Landlord's option, either terminate on said expiration date or be automatically renewed for an additional one year term at an increase of 10% over the existing rental.

2.  **We agree to:**
Supply at no extra charge the following:
A.   All utilities except electric and telephone
B.   Heat at reasonable hours during the cold months of the year
C.   Hot and cold running water
D.   A range and refrigerator
E.   Air conditioners are not provided or replaced
F.   Building and grounds maintenance

3.  **You agree to:**
Take good care of the apartment and its fixtures and not allow anyone to drive nails in the walls or woodwork.

At your own cost and expense make and do all repairs required to walls, ceiling, paper, glass, plumbing work, ranges, refrigerators, air conditioners, dishwashers, disposals, pipes and fixtures in the apartment resulting from your misuse or neglect and at the end or other expiration of the term you shall deliver up the premises in good order and condition. You shall be responsible for any damage to any other portion of the building caused by your negligence.

Not do or permit anything to be done in or about the premises which shall interfere with the rights of other tenants.

Not install any secondary locks without the prior written consent of the landlord and then only provided that an additional key is supplied to the landlord in order that landlord may gain access to the premises at any time.

Not install or use any clothes dryer, freezer, clothes washing machine, garbage disposal unit or any appliance which may interfere with radio or television reception, except with the written permission of the landlord.

Not assign this lease nor sublet your apartment or any part of it.

Apartment may not be left vacant for extended periods of time. Tenant is responsible to maintain minimal heating while not in apartment to avoid pipes freezing in the winter.

Keep your children, if any, off the lawns, common hallways and parking areas.

Pay for the cost of all electricity used in the premises.

Not allow boats, trailers or other unauthorized vehicles to be parked anywhere on the premises belonging to the landlord.

Not repair cars on the premises.

Not install window air-conditioners without prior written consent of the landlord.  All air-conditioners must be removed from the windows from October 15th to May 15th.

Be responsible for the condition of the screens, blinds and windows after accepting occupancy of the apartment.

Pay rent to the landlord by money order or certified check.  If any previous rent payment has been returned for any reason, there will be a $35.00 charge.  Landlord will not accept post dated checks and will not be responsible for any fees incurred if post dated check is received and deposited.

Pay a charge of $125.00 unless you return the keys to the landlord immediately upon vacating.

Pay reasonable attorney's fees in the event a suit for possession or suit is instituted because of your failure to pay rent when due; this fee will be considered as additional rent.

Give the landlord the right, without notice according to law, to sell or otherwise dispose of any personal property left by you on or about the premises after you have vacated the premises, or have been evicted for non-payment of rent.

**We both agree:**

This lease is subject and subordinate to all mortgages now or hereafter placed on the property.

A guarantee is not provided for a specific date for delivery of the apartment but rent shall only be charged from the date on which possession is made available.

There will be no rent reduction or compensation for inconvenience due to repairs or interruption of service of heat, hot water, or appliances unless caused by the negligence of the landlord.

No promises have been made except those in this lease.

All notices, complaints or repair requests under this lease must be in writing [certified] except requests for emergency repairs.

In the event the tenant shall move or arrange to move from the leased premises before the expiration of the term without the written permission of the landlord, all rents reserved accrued or to accrue shall become immediately due and payable.   If the tenant is evicted for any violation of the lease; tenant will be responsible for rent till the end of the Lease term, or until the Landlord is able to re-rent the apartment whichever comes first.

Any damage in the development caused by the tenant or any member of his family may be repaired by the landlord and the cost charged to the tenant to be paid with the next rent payment as additional rent.

Tenant acknowledges receipt of the Landlord's Registration Statement as required by law and a copy of the "Truth in Renting" statement issued by the N.J. Department of Community Affairs.

The landlord or its agents shall not be liable for any damage to property entrusted to employees of the building nor for the loss of any property by theft or otherwise.

Tenant has examined the premises and is satisfied with the physical condition except as set forth in an addendum to be affixed hereto, and the taking of possession thereof is conclusive evidence of receipt of them in good order and repair.

This lease can be changed in writing only, signed by both landlord and tenant.

Tenant shall observe the Rules and Regulations affixed hereto and any changes made by the landlord; said Rules and Regulations are hereby made part of the lease.

Tenant has received a copy of the EPA booklet entitled "Protect Your Family From Lead In Your Home".

"SEE ANNEXED RIDER RELATING TO LEAD DISCLOSURE"

## NO PETS ALLOWED.

**Violation, Eviction and Re-entry**
The Landlord reserves the right of re-entry which allows the Landlord to end this Lease and re-enter the Apartment if the Tenant violates any agreement in this Lease.  This is done by eviction. Eviction is a court procedure to remove a tenant. The Landlord may also evict the Tenant for any one of the other grounds of good cause allowed by law. Eviction is started by the filing of a complaint and a summons to appear in court.  After obtaining a judgment for possession and compliance with the warrant of removal the Landlord may re-enter and take back possession of the Apartment.  If the cause for eviction is non-payment of Rent, notice does not have to be given to the Tenant before the Landlord files a complaint.  If there is any other cause to evict, the Landlord must give to the Tenant the notice required by law before the Landlord files a complaint for eviction.

**Liability of Landlord and Tenant**
The Landlord is not liable for loss, injury, or damage to any person or property unless it is due to the Landlord's act or neglect.  The Tenant is liable for any loss, injury or damage to any person or property caused by the act or neglect of the Tenant, the Tenant's family or domestic employee or others over whom the Landlord has no control.

**Tenant's Repairs and Maintenance**
The tenant shall: (a) pay for all repairs, replacements and damages caused by the act or neglect of the Tenant and the Tenant's family, guests and domestic employees.
(b) Promptly notify the Landlord of conditions which need repair.
(c) Use no more electricity than the wiring to the Apartment or feeders to the Building can safely carry.

**Access to Apartment**
The Landlord shall have access to the Apartment on reasonable notice to tenant to (a) inspect the Apartment, (b) make necessary repairs, alterations, or improvements, (c) supply services, and (d) show it to possible buyers, mortgage lenders, contractors and insurers.
The Landlord may show the Apartment to rental applicants at reasonable hours on notice to the Tenants within 3 months before end of the Term.
The Landlord may enter the Apartment at any time without notice to the Tenant in case of emergency.

**Fire and Other Casualty**
The Tenant shall notify the Landlord at once of any fire or other casualty in the Apartment. The tenant is not required to pay rent when the Apartment is unusable.  If the Tenant uses part of the Apartment for living purposes; the Tenant must pay rent pro-rata for the usable part.

Either party may cancel this Lease if the Apartment is so damaged by fire or other casualty that is cannot be repaired within 90 days.  If the parties cannot agree, the option of a contractor chosen by the Landlord and the Tenant will be binding on both parties.

This Lease shall end if the Apartment is totally destroyed.  The Tenant shall pay rent to the date of destruction.

If the fire or other casualty is caused by the act or neglect of the Tenant, the Tenant's family, guests or domestic employees, the Tenant shall pay for all repairs and all other damages.

**Survival**
If any agreement in this Lease is contrary to law, the rest of the Lease shall remain in effect.

**End of Term**

At the end of the Term the Tenant shall (a) leave apartment clean, (b) remove all of the Tenant's property, (c) repair all damage including that caused by moving, and (d) vacate the Apartment and return it with all keys to the Landlord in the same condition as it was at the beginning of the Term except for normal wear and tear.

**RULES AND REGULATIONS:**

**TENANT WILL NOT:**

1. Leave any personal belongings on lawns, walks, driveways or in public hall;
2. Do anything to disturb his neighbors;
3. Overload the electric system or use the kitchen sink or the toilet for garbage or waste;
4. Erect any window or door signs or outdoor radio, television aerials or satellite dishes on the Landlord's property including common areas, walls, under walls etc.
5. Change the lock on the apartment door;
6. Store any highly flammable material in the apartment or storage areas;
7. Litter or obstruct the public halls or grounds;
8. Do anything that will increase the insurance rates on the building;
9. Keep any pets in your apartment or in the development;
10. Violate any city or state laws or regulations;
11. Install any washing machines or dryers in your apartment;
12. Perform any vehicle repair work, changing oil, emptying ashtrays on the streets or in the driveways or parking areas, and/or washing cars on apartment property is prohibited.  Tenant may not park in fire zones or in front of garages at any time.
13. Install waterbeds without written permission of Landlord;
14. Install any air conditioners in windows without written consent of the Landlord.
15. Paint interior of apartment without written permission of Landlord.
16. Permit your children to play in public halls, fire escapes, lawns, parking lots or driveways.
17. Not engage in abusive conduct towards landlord, or employee.  Abusive conduct includes, but is not limited to, physical violence, assault, verbal abuse, committed by the tenant or any agent, employee, licensee, invitee of the tenant upon any employee or agent of the Landlord. Such abusive conduct constitutes a default under the lease by the tenant and landlord has the right to terminate this lease.
18. Cooking is not permitted on porches, balconies, and/or common grounds of the complex. Barbecues, charcoal grills, gas grills or any cooking apparatus are strictly prohibited
20. Tenant will not use any harsh cleaners on the hardwood floors.  Tenant will only use a dust mop and hardwood floor cleaner on floors.  Any damage caused to the hardwood floors by the tenant will be charged to the tenant at the prevailing rate per square foot. Tenant will cover at least 75% of hard wood floors with carpeting.

**TENANT WILL:**

1. Place garbage in receptacles provided by landlord; All trash shall be disposed of in proper containers. No trash, bottles or papers shall be left in any hall or other public place. Tenant's family members, visitors, licensees, invitees, employees and agents are expressly forbidden to throw anything whatsoever out of the windows or doors.  Recycling must be performed in accordance with the local ordinances.
2. Take good care of the apartment and the equipment supplied by landlord;
3. Not wash motor vehicles on landlord's property;
4. Obey the parking regulations which may be posted by landlord.
5. Use the apartment only as a residence for the persons listed on your application;
6. Permit landlord or its agents to enter the apartment during reasonable hours to
   (a) inspect for, or make necessary repairs, or
   (b) Show the apartment to future tenants.
7. Replace all broken glass and screens at their own expense if the damage is caused by the tenant.
8. Make inspection with Landlord's agent on day of vacating premises between the hours of 9 a.m. and 5 p.m., excepting Sundays, and sign a move-out report as to condition of premises.
9. Park one vehicle by permit only and only with a current registration and valid inspection sticker. Others will be towed away at owner's expense.
10. Tenant is responsible for the maintenance of the smoke detector and carbon monoxide detector  provided by the management.
11. The Tenant is responsible for obtaining renters insurance for their personal property. The Landlord assumes no liability for the tenant's personal property.
12. Agrees to pay as additional rent all reasonable attorney fee, late charges, legal fees, court cost, and other expenses incurred by the landlord in the enforcement of any of the agreements, covenants, and obligations under the lease and the law.  These fees and costs, if not paid when due and owing, shall be deducted from the tenant's security at the end of the tenants lease.

13. The tenant agrees to give prompt written notice to the Landlord of any leak, flooding, chipping paint, mold or other defects in the premises.
14. The tenant shall close all openings to the apartment to avoid possible damage from storm, rain or freezing. All doors and windows must be closed when the tenant leaves the apartment. The tenant will be billed for any windows found open during the heating season.
15. The tenant shall be responsible for replacing all burned-out light bulbs in his or her apartment.
16. The tenant will make the apartment available for extermination as necessary.
17. Keep windows closed during heating to season to minimize heat lose.

TENANT AGREES;

In the event of a tax increase during the term of the lease, Landlord shall have the right to surcharge the tenant their prorated share of such increase in accordance with the law. Additionally, if a capital improvement is made, the landlord shall also have the right to increase the rent in accordance with the law. These increases will be considered "Additional Rent".

In the event the landlord, in its sole opinion, determines that Tenant's apartment is unsanitary or is creating an infestation situation or otherwise fails to maintain the apartment in accordance with the rules and regulations of the Board of Health, and tenant fails to cure such condition within twenty-four (24) hours of notice from Landlord or the Board of Health, Landlord shall have the right to take all steps as are necessary to cure this problem at Tenant's sole cost and expense. Such cost and expense shall be considered as additional rent. Landlord shall have the option of terminating the tenancy for Tenant's failure to comply with the provisions of this paragraph.

Landlord:

By:

Date: 11/2/2015

Tenant:

Tenant:

# EXHIBIT C

**LENTO LAW GROUP, P.C.**
Daniel W. Weininger (DW-5824)
3000 Atrium Way, Suite 200
Mount Laurel, NJ 08054
Tel: (856) 652-2000
dwweininger@lentolawgroup.com
weiningerlaw@gmail.com
*Counsel for Defendant Craig Callaway*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MARTY SMALL and LaQUETTA SMALL,<br><br>                              Plaintiffs,<br><br>        v.<br><br>CRAIG CALLAWAY and JOHN DOES 1-5,<br><br>                              Defendants. | Case No.<br><br><br>**<u>NOTICE OF REMOVAL</u>**<br><br><br>**<u>Jury Trial Requested</u>** |

Defendant Craig Callaway ("Callaway"), by and through his counsel, Lento Law Group, P.C., gives notice of removal of this case from the Superior Court of New Jersey, Law Division, Atlantic County, in which it is currently pending, to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1331, 1441, 1446.  In support, and for the purpose of removal only, Callaway states the following:

1.     On March 15, 2021, plaintiffs Marty and LaQuetta Small ("Plaintiffs")
commenced this action against Callaway and several unnamed defendants alleging
causes of action for slander per se (Count I) and conspiracy to slander (Count II).

2.     Marty Small is currently the mayor of Atlantic City. (Compl. at ¶ 1). LaQuetta
Small is currently the principal of Atlantic City High School.  She was formerly the
principal of the Pennsylvania Avenue School from 2013 through 2018. (*Id.* at ¶ 2).

3.     Callaway received service of the complaint on or about March 25, 2021.

4.     A party may timely remove a pending state court action to federal district
court if the federal district court would have had original jurisdiction over the state
court action. 28 U.S.C. § 1441.

5.     Federal jurisdiction over state law claims exists where a federal question is
"(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of
resolution in federal court without disrupting the federal-state balance approved by
Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable & Sons Metal
Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).

6.     Since Plaintiffs are both public officials/figures they must establish, among
other things, that Callaway slandered them with "actual malice," otherwise known
as "constitutional malice." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-
80 (1964); *Senna v. Florimont*, 196 N.J. 469, 496 (2008) ("[t]he actual-malice

2

standard will apply when the alleged defamatory statement concerns a public figure or a public official").

7.      The actual malice standard derives from the First and Fourteenth Amendments to the United States Constitution. *New York Times*, 376 U.S. at 283 ("We conclude that such a privilege is required by the First and Fourteenth Amendments."). It is a "*federal rule* that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made . . . with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279-80; *see also Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 163-65 (1967) (Warren, C.J., concurring) (applying the actual malice standard to public figures).

8.      Because Plaintiffs must establish "actual malice" as an element of their slander per se claim, and since the actual malice standard is "required by the First and Fourteenth Amendments," the complaint "necessarily raise[s]" a federal question that is "actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

9.      Furthermore, this notice of removal is being timely filed within thirty (30) days "after the receipt by the defendant, through service or otherwise, of a copy of

the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . ." 28 U.S.C. § 1446(b)(1).

10.     The complaint constitutes the only "process, pleadings, and orders" that have been filed in this action to date. 28 U.S.C. § 1446(a).  A copy of the complaint is attached. (**Ex. A**).

11.     This notice of removal is being provided to the Superior Court of New Jersey, Atlantic County, Law Division, as well as opposing counsel, concurrent with its filing in this Court.  A copy of the notice to the Superior Court is attached. (**Ex. B**).

12.     Since the Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and because all other prerequisites for removal are satisfied, this matter may be removed pursuant to 28 U.S.C. § 1441.

In view of the foregoing, Callaway respectfully requests that the United States District Court for the District of New Jersey accept this notice of removal and exercise jurisdiction over this action.

## **JURY DEMAND**

Callaway respectfully requests a trial by jury on all matters before the Court to the extent allowed by law.

4

Respectfully submitted,

Dated: April 8, 2021

/s/ *Daniel W. Weininger*
Daniel W. Weininger (DW-5824)
Lento Law Group, P.C.
3000 Atrium Way, Suite 200
Mount Laurel, NJ 08054
Tel: (856) 652-2000
dwweininger@lentolawgroup.com
weiningerlaw@gmail.com

*Counsel for Defendant Craig Callaway*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that on this day, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I certify under penalty of perjury that the foregoing is true and correct.

/s/ *Daniel W. Weininger*
Daniel W. Weininger

## REQUEST PURSUANT TO LOCAL RULE 201.1(d)(2)

Callaway hereby requests that this case not be designated or processed for compulsory arbitration as (1) it involves complex issues of public official/figure defamation law, and (2) the legal issues predominate over the factual issues. The case also implicates First Amendment protections contemplated under *New York*

5

*Times Co. v. Sullivan*, 376 U.S. 254 (1964), which makes formal adjudication, rather than arbitration, appropriate.

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2021, I electronically filed the foregoing document with the Clerk of the Court through the ECF system and served the following non-ECF participants through United States Postal Service first class mail and electronic mail at:

Edwin J. Jacobs, Jr., JACOBS & BARBONE, P.A., 1125 Pacific Avenue, Atlantic City, New Jersey 08401; and ejacobs@jacobsbarbone.law

/s/ *Daniel W. Weininger*
Daniel W. Weininger

*Counsel for Defendant Craig Callaway*

7

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MARTY SMALL and LaQUETTA SMALL, | Case No. |
| Plaintiffs, | **INDEX OF EXHIBITS** |
| v. | |
| CRAIG CALLAWAY and JOHN DOES 1-5, | |
| Defendants. | |

A.     State Court Complaint

B.     Notice of Removal to New Jersey Superior Court, Atlantic County, Law Division

# Exhibit A

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 42 of 60 PageID: 162
ATL-L-000862-21   03/15/2021 5:09:30 PM   Pg 1 of 14 Trans ID: LCV2021562998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 2 of 16 PageID: 10

Edwin J. Jacobs, Jr., Esquire (NJ Attorney I.D.#2714011971)
JACOBS & BARBONE, P.A.
A Professional Corporation
Attorneys at Law
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
ejacobs@jacobsbarbone.law
Attorneys for Plaintiffs Marty Small and LaQuetta Small

| | |
|---|---|
| MARTY SMALL and LaQUETTA SMALL,<br><br>Plaintiffs,<br><br>vs.<br><br>CRAIG CALLAWAY and JOHN DOES 1-5<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>ATLANTIC COUNTY<br><br>DOCKET NO.<br><br>Civil Action<br><br>**COMPLAINT, JURY DEMAND AND<br>DESIGNATION OF TRIAL COUNSEL** |

Plaintiffs, Marty Small and LaQuetta Small, residing at 116 Presbyterian Avenue, Atlantic City, Atlantic County, New Jersey, complaining against the defendants, say as follows:

BACKGROUND

1.      Plaintiff Marty Small ("Mayor Small") is currently the Mayor of the City of Atlantic City. He was re-elected to a one-year term following the City's November 2020 Special Election.

2.      Plaintiff LaQuetta Small ("Dr. Small") is the Principal of Atlantic City High School.  Prior to her assuming that role in 2019, Dr. Small was the Principal of the Pennsylvania Avenue School in Atlantic City, New Jersey from 2013 to 2018.

3.      While Dr. Small was serving as the Principal of the Pennsylvania Avenue School, the Atlantic City School District hired her cousin, Kayan Frazier, as a substitute

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 43 of 60 PageID: 163
ATL-L-000862-21   03/15/2021 5:09:30 PM   Pg 2 of 14   Trans ID: LCV2021362998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 3 of 16 PageID: 11

teacher.   Frazier filled in at multiple schools throughout the district including the Pennsylvania Avenue School and the Board approved him for hire on March 30, 2015.

4.     When the Board approved Frazier in March of 2015 he was living at the Small residence.  But as of November 2, 2015, Frazier lived in his own residence located at 2200 Hamilton Avenue, Apartment A, Atlantic City, New Jersey.  The Atlantic City Board of Education issued a W-2 to Frazier for the 2015-2016 year which confirmed that address.  His lease there started in August of 2015.  (**Exhibit A**).

5.     From the time that he was hired until his termination, Frazier was sent to the following schools as a substitute teacher:   Uptown Complex, Sovereign Avenue School, Dr. Martin Luther King, Jr. School, Texas Avenue School, Richmond Avenue School, Brighton Avenue School and Pennsylvania Avenue School.   For two years, Frazier performed without any apparent issues.

6.     However in February of 2017, Dr. Small learned that Frazier was interacting with a student outside of school hours, in part by picking him up from school in his personal vehicle and hosting him overnight.  Dr. Small reported Frazier's unprofessional conduct to the proper authorities:

  (a)   On February 24, 2017, Dr. Small filed a report with the Division of Child Protection and Permanency and detailed the unprofessional conduct of Frazier;

  (b)   Simultaneously, Dr. Small completed a Source4Teachers incident report form that cited Frazier for unprofessional conduct and recommended that he be "removed from school";

  (c)   Dr. Small took an additional step and contacted the mother of the student that Frazier was spending time with outside of school.  The student's mother told Dr. Small that Frazier was "helping out";

  (d)   On March 15, 2017, Dr. Small sent follow-up correspondence to the District Manager of Source4Teachers, Wesley Wallace.  She

2

believed the student was still staying overnight at Frazier's home and repeated that Frazier's conduct was "inappropriate"; and

(e)     When Dr. Small received a response from Mr. Wallace, she immediately sent another letter disclosing new information regarding Frazier texting a student.

7.     Notwithstanding Dr. Small's reporting, Frazier was placed at five (5) schools in the Atlantic City School District over the course of thirteen (13) days in the month of March 2017.  On April 3, 2017, Frazier was terminated from his position as a substitute teacher in the Atlantic City School District. No formal investigation was conducted by the Board at that time.

<u>The Federal Criminal Complaint Signed Against Frazier</u>

8.     Beginning in February of 2019, the Atlantic County Prosecutor's Office began investigating Kayan Frazier for sexual misconduct involving minors. On April 15, 2019, the Atlantic County Prosecutor's Office charged Frazier with unlawful possession of child pornography.

9.     Thereafter, the United States began an investigation into Frazier and obtained federal warrants to search Frazier's apartment and car on May 23, 2019.  On July 3, 2019, a criminal complaint was filed against Frazier in the Federal District Court of New Jersey.  Count I of the Complaint charged "receipt of child pornography" from March of 2015 through April 15, 2019.  Count II charged "distribution of child pornography" from September 8, 2018 through November 11, 2018.  Count III charged "production of child pornography" from March 2017 to April 15, 2019.

10.     Counts II and III of the Complaint against Frazier establish a time frame of March 2017 to April 15, 2019, when Frazier did not live with the Smalls. The only relevant

3

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 45 of 60 PageID: 165
ATL-L-000862-21   03/15/2021 5:09:30 PM   Pg 4 of 14 Trans ID: LCV2021562998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 5 of 16 PageID: 13

locations regarding Counts II and III in the Complaint are 2200 Hamilton Avenue, Atlantic City, NJ and Somers Point, NJ, both of which were leased by Frazier.

<u>Defendant Craig Callaway's Defamatory Statements</u>

11.    Defendant Craig Callaway is a political organizer. Defendant Callaway's political affiliations motivated him to falsely accuse Mayor Small and Dr. Small of serious criminal activity involving sexual abuse of children that he knew was false and/or in reckless disregard of the truth.

12.    On October 19, 2020, defendant Callaway appeared on the Harry Hurley talk show, WPG 95.5 FM, and published multiple lies to the 1.8 million citizens across the seven (7) counties in South Jersey that make-up Hurley's audience. Defendant Callaway accused Mayor Small and Dr. Small of consenting to Frazier's rape of children in their home and covering it up. Thus, defendant Callaway falsely accused the Smalls of committing a crime.

13.    During the interview with Hurley, defendant Callaway published the following lies:

- "Marty Small attacked me about my support for Van Drew … and I just want to say this … Marty, you and your wife should have been focused on protecting and saving children who were in your home, who were savagely attacked and raped in your home."

- "You had the opportunity and obligation to protect the children in the City of Atlantic City in your home and you failed abjectly."

- "By choosing to not do the human thing, they [Mayor Small and Dr. Small] chose to protect themselves and their interest."

14.    Befuddled by defendant Callaway's statements, Hurley cautiously asked if there was actually any evidence that the allegations in the Frazier complaint took place in the Small's home. Defendant Callaway completely avoided Hurley's question. But 25

4

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 46 of 60 PageID: 166
ATL-L-000862-21   03/15/2021 5:09:30 PM   Pg 5 of 14   Trans ID: LCV2021562998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 6 of 16 PageID: 14

seconds later, Hurley repeated himself and defendant Callaway hesitantly responded as follows:

> "Yes ... it's public, it's right there ... it happened, it actually happened ... that's the reason the monster was removed from their home".

Defendant Callaway provided no factual support for his statements that children were raped in the Small's home nor did he explain where it was "public record".

15.     One week later on October 26, 2020, defendant Callaway appeared on a live "AC 411" interview and demonstrated that he maliciously lied during the October 19, 2020 interview on Harry Hurley.  Defendant Callaway also published additional lies about the Smalls further accusing them of knowingly allowing Frazier to sexually abuse children.

16.     Defendant Callaway began the AC 411 interview by stating that it was "public information" that "LaQuetta Small caught Frazier with a child." Then he recited all of the different homes where Frazier could have raped children, particularly focusing on Frazier's 2200 Hamilton Ave. and Somers Point apartments listed in the Frazier complaint even though he stated it was "public record" that children were raped in the Small home. Defendant Callaway also stated that "Marty allowed Frazier to attack children time after time in Somers Point" and that "Marty caught Frazier with a child." Finally, he claimed Dr. Small did nothing as Principal.

17.     The criminal accusations that defendant Callaway published against the Smalls during both interviews were false and defendant Callaway knew they were false and/or in reckless disregard of the truth.

18.     Frazier moved out of the Small home in August of 2015 and thereafter lived at 2200 Hamilton Avenue and in Somers Point.  Counts II and III of the Frazier Complaint

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 47 of 60 PageID: 167
ATL-L-000862-21   03/15/2021 5:05:30 PM   Pg 6 of 14   Trans ID: LCV2021562998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 7 of 16 PageID: 15

charge production and distribution of child pornography, respectively, beginning March 2017 through April 15, 2019.  These dates are years after Frazier vacated plaintiffs' residence.

## COUNT 1
### (Slander Per Se)

19.     Defendant Callaway, at all times relevant hereto, knowingly published false information accusing Mayor Small and Dr. Small of a crime, and/or published such criminal accusations in reckless disregard of the truth.

WHEREFORE, plaintiffs demand judgment against defendant Callaway for the publication of defamatory statements accusing the plaintiffs of a morally reprehensible crime as follows:

A.      Compensatory damages;

B.      Punitive damages; and

C.      Any other relief which the Court deems equitable and just.

## COUNT 2
### (Civil Conspiracy)

20.     Plaintiffs repeat and incorporate all previous allegations as if fully set forth herein.

21.     Civil conspiracy is an agreement by two or more persons to commit a wrongful act, which agreement may be made orally, in writing, or may be implied by the conduct of the parties.

22.     In the months leading up to the November 2020 special election, defendant Callaway was encouraged by and collaborated with John Does 1-5 to publish information regarding Mayor Small and Dr. Small that they knew was false and/or in reckless

6

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 48 of 60 PageID: 168
ATL-L-000862-21   03/15/2021 5:09:30 PM   Pg 7 of 14 Trans ID: LCV20211562998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 8 of 16 PageID: 16

disregard of the truth. The identities of the those persons are currently unknown and unconfirmed.

WHEREFORE, plaintiffs demand judgment against defendant Callaway and John Does 1-5 for conspiring to defame Mayor Small and Dr. Small by accusing them of a crime as follows:

    A.      Compensatory damages;

    B.      Punitive damages; and

    C.      Any other relief which the Court deems equitable and just.

### RULE 4:5-1 CERTIFICATION

Pursuant to R. 4:5-1, I hereby certify that to the best of my knowledge, information and belief, the matter in controversy is not the subject of any other action pending in any Court or arbitration proceedings, and no other action is contemplated.  I know of no other parties that should be joined herein.

### CERTIFICATION OF COMPLIANCE WITH R. 1:38-7(c)

I certify the Confidential Personal Identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

### JURY DEMAND PURSUANT TO R. 1:8-1(b) and R. 4:35-1

Plaintiffs, Marty Small and LaQuetta Small, hereby request trial by jury as to all issues herein.

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 49 of 60 PageID: 169
ATL-L-000862-21   03/15/2021 5:09:30 PM   Pg 8 of 14 Trans ID: LCV2021562998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 9 of 16 PageID: 17

## DESIGNATION OF TRIAL COUNSEL 4:5-1(c)

Plaintiffs, Marty Small and LaQuetta Small, hereby designate Louis M. Barbone, Esquire as trial counsel in the within matter.

JACOBS & BARBONE, P.A.

Edwin J. Jacobs, Esquire

Dated:  3-9-21

# EXHIBIT A

Case 1:21-cv-08665-JHR-AMD Document 7-1 Filed 04/20/21 Page 51 of 60 PageID: 171
ATCVL000082-121 09/13/2021 5:09:30 PM Pg 10 of 14 Trans ID: LCV20211562998
Case 1:21-cv-08665-JHR-AMD Document 1-2 Filed 04/08/21 Page 11 of 16 PageID: 19

# LEASE AGREEMENT

**IMPORTANT PHONE NUMBERS:**

| | |
|---|---|
| **MAIL PAYMENTS TO:** | **MANAGEMENT OFFICE: 732-340-0100** |
| **HAMILTON VENICE PARK, LLC** | **MAINTENANCE: 609-348-5630** |
| **P.O. BOX 1667** | **SUPERINTENDENT: 609-348-5630** |
| **LINDEN, NJ 07036** | |

Lease, made this **2ND DAY OF NOVEMBER, 2015,** whereby **HAMILTON VENICE APTS., LLC,** Landlord,

Lessor, and **KA'YAN AND SHARNICE FRAZIER,** TENANTS

now residing at **116 N. PRESBYTERIAN AVENUE, ATLANTIC CITY, NJ 08401**

take the apartment **#A** in the building at **2200 HAMILTON AVENUE, ATLANTIC CITY, NJ 08401**

to be occupied as a strictly private dwelling apartment by one family of **TWO** person/s for a period of **ONE YEAR**
**Occupants:    KA'YAN FRAZIER AGE: 23   SHARNICE FRAZIER AGE: 23**

From **NOVEMBER 2, 2015, THROUGH OCTOBER 31, 2016** at the yearly rent of **$9,600.00** payable in equal monthly installments of **$800.00** in advance on the *1st day of each month*. Tenant agrees to pay a *late charge of $25.00* on any rent payment remaining unpaid for a period of *5 days after such payment becomes due*, and shall become immediately due as additional rent. Payment by tenant or receipt by landlord of a lesser amount than the monthly rent provided in this agreement shall be applied to the earliest unpaid rent. If rent not paid by *10th day of any month*, legal action will be taken.

1.   Landlord requires a security deposit in the amount of **$800.00.** Which will be deposited in an interest bearing escrow account at the current interest rate of .45% at The Provident Bank, P O Box 1001, Iselin, NJ 08830? Said security shall not be applied as rent to any month by the tenant or the landlord.

**Renewals and Changes in the Lease:** The Landlord may offer the tenant a new lease to take effect at the end of the lease. The new lease may include reasonable changes. The tenant will have Thirty days (30) before the Lease Term ends to notify Landlord in writing of their acceptance or decision to vacate the premises at the end of the Lease. Tenant must give landlord 30 days notice, by certified mail, of intention not to renew tenancy or be liable for one month's additional rent. If the notice not to renew the Tenancy is not given within the time as agreed, this lease shall, at Landlord's option, either terminate on said expiration date or be automatically renewed for an additional one year term at an increase of 10% over the existing rental.

2.   **We agree to:**
     Supply at no extra charge the following:
     A.   All utilities except electric and telephone
     B.   Heat at reasonable hours during the cold months of the year
     C.   Hot and cold running water
     D.   A range and refrigerator
     E.   Air conditioners are not provided or replaced
     F.   Building and grounds maintenance

3.   **You agree to:**
     Take good care of the apartment and its fixtures and not allow anyone to drive nails in the walls or woodwork.

     At your own cost and expense make and do all repairs required to walls, ceiling, paper, glass, plumbing work, ranges, refrigerators, air conditioners, dishwashers, disposals, pipes and fixtures in the apartment resulting from your misuse or neglect and at the end or other expiration of the term you shall deliver up the premises in good order and condition. You shall be responsible for any damage to any other portion of the building caused by your negligence.

     Not do or permit anything to be done in or about the premises which shall interfere with the rights of other tenants.

     Not install any secondary locks without the prior written consent of the landlord and then only provided that an additional key is supplied to the landlord in order that landlord may gain access to the premises at any time.

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 52 of 60 PageID: 172
ATEL-000882-2JR 03/15/2021 5:09:30 PM  Pg 11 of 14 Trans ID: LCV2021562998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 12 of 16 PageID: 20

Not install or use any clothes dryer, freezer, clothes washing machine, garbage disposal unit or any appliance which may interfere with radio or television reception, except with the written permission of the landlord.

Not assign this lease nor sublet your apartment or any part of it.

Apartment may not be left vacant for extended periods of time. Tenant is responsible to maintain minimal heating while not in apartment to avoid pipes freezing in the winter.

Keep your children, if any, off the lawns, common hallways and parking areas.

Pay for the cost of all electricity used in the premises.

Not allow boats, trailers or other unauthorized vehicles to be parked anywhere on the premises belonging to the landlord.

Not repair cars on the premises.

Not install window air-conditioners without prior written consent of the landlord.  All air-conditioners must be removed from the windows from October 15th to May 15th.

Be responsible for the condition of the screens, blinds and windows after accepting occupancy of the apartment.

Pay rent to the landlord by money order or certified check.  If any previous rent payment has been returned for any reason, there will be a $35.00 charge.  Landlord will not accept post dated checks and will not be responsible for any fees incurred if post dated check is received and deposited.

Pay a charge of $125.00 unless you return the keys to the landlord immediately upon vacating.

Pay reasonable attorney's fees in the event a suit for possession or suit is instituted because of your failure to pay rent when due; this fee will be considered as additional rent.

Give the landlord the right, without notice according to law, to sell or otherwise dispose of any personal property left by you on or about the premises after you have vacated the premises, or have been evicted for non-payment of rent.

**We both agree:**

This lease is subject and subordinate to all mortgages now or hereafter placed on the property.

A guarantee is not provided for a specific date for delivery of the apartment but rent shall only be charged from the date on which possession is made available.

There will be no rent reduction or compensation for inconvenience due to repairs or interruption of service of heat, hot water, or appliances unless caused by the negligence of the landlord.

No promises have been made except those in this lease.

All notices, complaints or repair requests under this lease must be in writing [certified] except requests for emergency repairs.

In the event the tenant shall move or arrange to move from the leased premises before the expiration of the term without the written permission of the landlord, all rents reserved accrued or to accrue shall become immediately due and payable.   If the tenant is evicted for any violation of the lease; tenant will be responsible for rent till the end of the Lease term, or until the Landlord is able to re-rent the apartment whichever comes first.

Any damage in the development caused by the tenant or any member of his family may be repaired by the landlord and the cost charged to the tenant to be paid with the next rent payment as additional rent.

Tenant acknowledges receipt of the Landlord's Registration Statement as required by law and a copy of the "Truth in Renting" statement issued by the N.J. Department of Community Affairs.

The landlord or its agents shall not be liable for any damage to property entrusted to employees of the building nor for the loss of any property by theft or otherwise.

Case 1:21-cv-08665-JHR-AMD  Document 7-1  Filed 04/20/21  Page 53 of 60 PageID: 173
ATCL-000862-21  03/15/2021 5:09:30 PM  Pg 12 of 14 Trans ID: LCV2021562998
Case 1:21-cv-08665-JHR-AMD  Document 1-2  Filed 04/08/21  Page 13 of 16 PageID: 21

Tenant has examined the premises and is satisfied with the physical condition except as set forth in an addendum to be affixed hereto, and the taking of possession thereof is conclusive evidence of receipt of them in good order and repair.

This lease can be changed in writing only, signed by both landlord and tenant.

Tenant shall observe the Rules and Regulations affixed hereto and any changes made by the landlord; said Rules and Regulations are hereby made part of the lease.

Tenant has received a copy of the EPA booklet entitled "Protect Your Family From Lead In Your Home".

"SEE ANNEXED RIDER RELATING TO LEAD DISCLOSURE"

## NO PETS ALLOWED.

**Violation, Eviction and Re-entry**
The Landlord reserves the right of re-entry which allows the Landlord to end this Lease and re-enter the Apartment if the Tenant violates any agreement in this Lease. This is done by eviction. Eviction is a court procedure to remove a tenant. The Landlord may also evict the Tenant for any one of the other grounds of good cause allowed by law. Eviction is started by the filing of a complaint and a summons to appear in court. After obtaining a judgment for possession and compliance with the warrant of removal the Landlord may re-enter and take back possession of the Apartment. If the cause for eviction is non-payment of Rent, notice does not have to be given to the Tenant before the Landlord files a complaint. If there is any other cause to evict, the Landlord must give to the Tenant the notice required by law before the Landlord files a complaint for eviction.

**Liability of Landlord and Tenant**
The Landlord is not liable for loss, injury, or damage to any person or property unless it is due to the Landlord's act or neglect. The Tenant is liable for any loss, injury or damage to any person or property caused by the act or neglect of the Tenant, the Tenant's family or domestic employee or others over whom the Landlord has no control.

**Tenant's Repairs and Maintenance**
The tenant shall: (a) pay for all repairs, replacements and damages caused by the act or neglect of the Tenant and the Tenant's family, guests and domestic employees.
(b) Promptly notify the Landlord of conditions which need repair.
(c) Use no more electricity than the wiring to the Apartment or feeders to the Building can safely carry.

**Access to Apartment**
The Landlord shall have access to the Apartment on reasonable notice to tenant to (a) inspect the Apartment, (b) make necessary repairs, alterations, or improvements, (c) supply services, and (d) show it to possible buyers, mortgage lenders, contractors and insurers.
The Landlord may show the Apartment to rental applicants at reasonable hours on notice to the Tenants within 3 months before end of the Term.
The Landlord may enter the Apartment at any time without notice to the Tenant in case of emergency.

**Fire and Other Casualty**
The Tenant shall notify the Landlord at once of any fire or other casualty in the Apartment. The tenant is not required to pay rent when the Apartment is unusable. If the Tenant uses part of the Apartment for living purposes, the Tenant must pay rent pro-rata for the usable part.

Either party may cancel this Lease if the Apartment is so damaged by fire or other casualty that is cannot be repaired within 90 days. If the parties cannot agree, the option of a contractor chosen by the Landlord and the Tenant will be binding on both parties.

This Lease shall end if the Apartment is totally destroyed. The Tenant shall pay rent to the date of destruction.

If the fire or other casualty is caused by the act or neglect of the Tenant, the Tenant's family, guests or domestic employees, the Tenant shall pay for all repairs and all other damages.

**Survival**
If any agreement in this Lease is contrary to law, the rest of the Lease shall remain in effect.

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 54 of 60 PageID: 174
ATLL-000862-21   03/15/2021 5:09:30 PM  Pg 13 of 14 Trans ID: LCV2021562998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 14 of 16 PageID: 22

### End of Term

At the end of the Term the Tenant shall (a) leave apartment clean, (b) remove all of the Tenant's property, (c) repair all damage including that caused by moving, and (d) vacate the Apartment and return it with all keys to the Landlord in the same condition as it was at the beginning of the Term except for normal wear and tear.

## RULES AND REGULATIONS:

**TENANT WILL NOT:**

1. Leave any personal belongings on lawns, walks, driveways or in public hall;
2. Do anything to disturb his neighbors;
3. Overload the electric system or use the kitchen sink or the toilet for garbage or waste;
4. Erect any window or door signs or outdoor radio, television aerials or satellite dishes on the Landlord's property including common areas, walls, under walls etc.
5. Change the lock on the apartment door;
6. Store any highly flammable material in the apartment or storage areas;
7. Litter or obstruct the public halls or grounds;
8. Do anything that will increase the insurance rates on the building;
9. Keep any pets in your apartment or in the development;
10. Violate any city or state laws or regulations;
11. Install any washing machines or dryers in your apartment;
12. Perform any vehicle repair work, changing oil, emptying ashtrays on the streets or in the driveways or parking areas, and/or washing cars on apartment property is prohibited.  Tenant may not park in fire zones or in front of garages at any time.
13. Install waterbeds without written permission of Landlord;
14. Install any air conditioners in windows without written consent of the Landlord.
15. Paint interior of apartment without written permission of Landlord.
16. Permit your children to play in public halls, fire escapes, lawns, parking lots or driveways.
17. Not engage in abusive conduct towards landlord, or employee.  Abusive conduct includes, but is not limited to, physical violence, assault, verbal abuse, committed by the tenant or any agent, employee, licensee, invitee of the tenant upon any employee or agent of the Landlord. Such abusive conduct constitutes a default under the lease by the tenant and landlord has the right to terminate this lease.
18. Cooking is not permitted on porches, balconies, and/or common grounds of the complex. Barbecues, charcoal grills, gas grills or any cooking apparatus are strictly prohibited
20. Tenant will not use any harsh cleaners on the hardwood floors.  Tenant will only use a dust mop and hardwood floor cleaner on floors.  Any damage caused to the hardwood floors by the tenant will be charged to the tenant at the prevailing rate per square foot.  Tenant will cover at least 75% of hard wood floors with carpeting.

**TENANT WILL:**

1. Place garbage in receptacles provided by landlord; All trash shall be disposed of in proper containers. No trash, bottles or papers shall be left in any hall or other public place. Tenant's family members, visitors, licensees, invitees, employees and agents are expressly forbidden to throw anything whatsoever out of the windows or doors.  Recycling must be performed in accordance with the local ordinances.
2. Take good care of the apartment and the equipment supplied by landlord;
3. Not wash motor vehicles on landlord's property;
4. Obey the parking regulations which may be posted by landlord.
5. Use the apartment only as a residence for the persons listed on your application;
6. Permit landlord or its agents to enter the apartment during reasonable hours to
   (a) inspect for, or make necessary repairs, or
   (b) Show the apartment to future tenants.
7. Replace all broken glass and screens at their own expense if the damage is caused by the tenant.
8. Make inspection with Landlord's agent on day of vacating premises between the hours of 9 a.m. and 5 p.m., excepting Sundays, and sign a move-out report as to condition of premises.
9. Park one vehicle by permit only and only with a current registration and valid inspection sticker. Others will be towed away at owner's expense.
10. Tenant is responsible for the maintenance of the smoke detector and carbon monoxide detector  provided by the management.
11. The Tenant is responsible for obtaining renters insurance for their personal property. The Landlord assumes no liability for the tenant's personal property.
12. Agrees to pay as additional rent all reasonable attorney fee, late charges, legal fees, court cost, and other expenses incurred by the landlord in the enforcement of any of the agreements, covenants, and obligations under the lease and the law.  These fees and costs, if not paid when due and owing, shall be deducted from the tenant's security at the end of the tenants lease.

Case 1:21-cv-08665-JHR-AMD   Document 7-1   Filed 04/20/21   Page 55 of 60 PageID: 175
ATL-L-000882-21 03/15/2021 5:09:30 PM Pg 14 of 14 Trans ID: LCV2021562998
Case 1:21-cv-08665-JHR-AMD   Document 1-2   Filed 04/08/21   Page 15 of 16 PageID: 23

13. The tenant agrees to give prompt written notice to the Landlord of any leak, flooding, chipping paint, mold or other defects in the premises.

14. The tenant shall close all openings to the apartment to avoid possible damage from storm, rain or freezing. All doors and windows must be closed when the tenant leaves the apartment. The tenant will be billed for any windows found open during the heating season.

15. The tenant shall be responsible for replacing all burned-out light bulbs in his or her apartment.

16. The tenant will make the apartment available for extermination as necessary.

17. Keep windows closed during heating to season to minimize heat lose.

TENANT AGREES;

In the event of a tax increase during the term of the lease, Landlord shall have the right to surcharge the tenant their prorated share of such increase in accordance with the law. Additionally, if a capital improvement is made, the landlord shall also have the right to increase the rent in accordance with the law. These increases will be considered "Additional Rent".

In the event the landlord, in its sole opinion, determines that Tenant's apartment is unsanitary or is creating an infestation situation or otherwise fails to maintain the apartment in accordance with the rules and regulations of the Board of Health, and tenant fails to cure such condition within twenty-four (24) hours of notice from Landlord or the Board of Health, Landlord shall have the right to take all steps as are necessary to cure this problem at Tenant's sole cost and expense. Such cost and expense shall be considered as additional rent. Landlord shall have the option of terminating the tenancy for Tenant's failure to comply with the provisions of this paragraph.

Landlord:

By:

Date: _11/2/2015_

Tenant: _Sharnice Tracy_

Tenant:

# Civil Case Information Statement

**Case Details: ATLANTIC | Civil Part Docket# L-000862-21**

**Case Caption:** JACOBS EDWIN  VS CALLAWAY CRAIG

**Case Initiation Date:** 03/15/2021

**Attorney Name:** EDWIN J JACOBS JR

**Firm Name:** JACOBS & BARBONE, PA

**Address:** 1125 PACIFIC AVE

ATLANTIC CITY NJ 08401

**Phone:** 6093481125

**Name of Party:** PLAINTIFF : Jacobs, Edwin, J

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** TORT-OTHER

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same**

**transaction or occurrence)?** YES

**Are sexual abuse claims alleged by:** Edwin J Jacobs? NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO

**If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO


I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/15/2021

Dated

/s/ EDWIN J JACOBS JR

Signed

# Exhibit B

**LENTO LAW GROUP, P.C.**
By:     Daniel W. Weininger, Esq. (Attorney ID 027412007)
<u>Mailing Address</u>
3000 Atrium Way, Suite 200
Mount Laurel, NJ 08054
Tel:     (856) 652-2000
Fax:     (856) 375-1010
dwweininger@lentolawgroup.com
weiningerlaw@gmail.com
*Attorney for Defendant Craig Callaway*

| | |
|---|---|
| MARTY SMALL and LaQUETTA SMALL,<br><br>*Plaintiffs*<br><br>v.<br><br>CRAIG CALLAWAY and JOHN DOES 1-5,<br><br>*Defendants* | SUPERIOR COURT OF NEW JERSEY<br>ATLANTIC COUNTY<br>LAW DIVISION<br><br>DOCKET NO.: ATL-L-000862-21<br><br><u>**CIVIL ACTION**</u><br><br>**NOTICE OF FILING OF NOTICE OF REMOVAL** |

TO:     Edwin J. Jacobs, Jr., Esquire
         JACOBS & BARBONE, P.A.
         1125 Pacific Avenue
         Atlantic City, New Jersey 08401

**PLEASE TAKE NOTICE** that the above-captioned matter has been removed from the Superior Court of New Jersey, Atlantic County, Law Division, where it was previously pending, to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.  A copy of the notice of removal (without the exhibits referenced therein) is attached as Exhibit A.

Dated: April 8, 2021

**LENTO LAW GROUP, P.C.**

By:   /s/ *Daniel W. Weininger*
      Daniel W. Weininger (Attorney ID 027412007)
      3000 Atrium Way, Suite 200
      Mount Laurel, NJ 08054
      Tel:     (856) 652-2000
      Fax:     (856) 375-1010
      dwweininger@lentolawgroup.com
      weiningerlaw@gmail.com

      *Attorney for Defendant Craig Callaway*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Marty Small and LaQuetta Small

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Edwin J. Jacobs, Jr.
Jacobs & Barbone, P.A.
1125 Pacific Avenue

## DEFENDANTS

Craig Callaway

County of Residence of First Listed Defendant __Atlantic County__
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Daniel W. Weininger
Lento Law Group, P.C.
3000 Atrium Way, Ste. 200

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
First Amendment to the United States Constitution
Brief description of cause:
Public Official Defamation Claim - NY Times v. Sullivan

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
Apr 8, 2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Daniel W. Weininger

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____